975 F.2d 333
 38 Soc.Sec.Rep.Ser. 618, Medicare & Medicaid Guide
P 40,777,
3 NDLR P 92
 Eleanor ROLOFF, individually, and as Personal Representative
of the Estates of Beatrice Beall and Bernice
Beall; and R. Dianne Strickland, as
Guardian of Dorothy Unger,
Plaintiffs-Appellants,
v.
Louis W. SULLIVAN, Secretary of the United States Department
of Health and Human Services; Gail R. Wilensky,
Administrator of the Health Care Financing Administration;
Michelle Harris, Regional Director of the United States
Department of Health and Human Services; Barbara Gagel,
Regional Administrator of the Health Care Financing
Administration; and Suzanne L. Magnant, Administrator of
the Indiana Department of Public Welfare, Defendants-Appellees.
 No. 91-3198.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 15, 1992.
Decided Sept. 11, 1992.
 
 Kent Hull (argued), Legal Services of Northern Indiana, South Bend, Ind., for plaintiffs-appellants.
 Clifford D. Johnson, Asst. U.S. Atty., Office of U.S. Atty., South Bend, Ind., Barbara F. Altman (argued), Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, Ill., for defendants-appellees Louis W. Sullivan, Gail R. Wilensky, Michelle Harris and Barbara Gagel.
 Leneigha L. Downs, Office of Atty. Gen., Federal Litigation, Indianapolis, Ind., for defendant-appellee Suzanne Magnant.
 Before CUMMINGS and POSNER, Circuit Judges, and WILL, Senior District Judge.*
 CUMMINGS, Circuit Judge.
 
 
 1
 Plaintiffs contend that Indiana's method of calculating the resources of Medicaid applicants, known as the first day of the month rule, is contrary to the Medicaid statute, 42 U.S.C. § 1396 et seq. Specifically, plaintiffs challenge Indiana's calculation of an applicant's resources on the first day of the month without regard to any depletions of the applicant's resources that occur later in the month. An applicant who depletes her resources in the middle of the month must wait to the beginning of the next month to qualify for Medicaid. Plaintiffs also claim that Indiana's first day of the month rule must be tempered by rules implementing "conditional eligibility" and "resource spend down," concepts we discuss in detail below. The district court granted summary judgment to the defendants, deciding that Indiana was permitted to implement this regulatory scheme. Plaintiffs appeal.
 
 I.
 
 2
 Plaintiffs filed their first amended class action complaint on April 19, 1990. The class was alleged in the complaint to consist of all persons who have applied for Medicaid in Indiana but have been denied eligibility because of the first day of the month rule, and all those likely to be denied eligibility because of the rule. The complaint alleged that defendants' actions violated the Medicaid statute (42 U.S.C. § 1396 et seq.), the Administrative Procedure Act (5 U.S.C. § 553), the Indiana rulemaking statute (Ind.Code § 4-22-2-3, et seq.), and the Fifth and Fourteenth Amendments.[1] Indiana's procedures were allegedly unlawful under 42 U.S.C. § 1396a(f) because they were more restrictive than those used by the state on January 1, 1972. On February 11, 1991, the district court certified a plaintiff class consisting of "all persons who have applied for (and will apply for in the future) Medicaid benefits for the aged, blind or disabled in the State of Indiana since the promulgation of the 'first day of the month rule' in 1984."
 
 
 3
 On July 24, 1991, the district court granted the defendants' motion for summary judgment. The court noted that there was an "apparent factual dispute over what standards were in effect in Indiana as of January 1, 1972," but decided that this apparent dispute was not material to the legal issues in the case. Roloff v. Sullivan, 772 F.Supp. 1083, 1090 (N.D.Ind.1991). Turning to the plaintiffs' arguments based on the Medicaid Act, the district court concluded that "A state is only subjected to the limits of those policies in effect as of January 1, 1972 when that state has not adopted [Supplemental Security Income] eligibility requirements. Since the first day of the month rule is part of the [Supplemental Security Income] program, Indiana's adoption of that rule complies with its statutory duties under § 1396a(f)." Id. at 1092. An argument that the Medicaid Act requires Indiana to have a resource spend down rule was also rejected by the Court, which found the decision of Gandenberg v. Barry, 687 F.Supp. 346 (S.D.Ohio 1988), persuasive. Finally, the Court rejected plaintiffs' argument that Indiana's procedures were faulty under 42 U.S.C. § 1396a(a)(17), which requires that eligibility standards take "into account only such income and resources as are * * * available to the applicant or recipient" and "provide for reasonable evaluation of any such income or resources."
 
 II.
 A. Federal Statutory Background
 
 4
 Medicaid is an intricate program whereby states and the federal government cooperate to give medical assistance to the needy. "Although participation in the Medicaid program is entirely optional, once a state elects to participate, it must comply with the requirements of Title XIX [42 U.S.C. § 1396 et seq.]." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2679, 65 L.Ed.2d 784. Generally speaking, states serve two groups of persons through their Medicaid programs. First, states are obligated to serve (with an important exception noted below) the "categorically needy," which are defined to include families with dependent children eligible for public assistance under the Aid to Families with Dependent Children ("AFDC") program, 42 U.S.C. § 601 et seq., and the aged, blind, and disabled eligible for benefits under the Supplemental Security Income ("SSI") program, 42 U.S.C. § 1381 et seq. See 42 U.S.C. § 1396a(a)(10)(A); Harris, 448 U.S. at 301 n. 1, 100 S.Ct. at 2680 n. 1. Second, states are permitted, but not obligated, to serve the "medically needy," which refers to those persons in need of medical assistance whose income levels disqualify them for the AFDC or SSI programs. See 42 U.S.C. § 1396a(a)(1)(C); Harris, 448 U.S. at 301 n. 1, 100 S.Ct. at 2680 n. 1. Indiana has chosen not to offer Medicaid coverage to the medically needy.
 
 
 5
 A state's obligation to provide Medicaid coverage to the categorically needy is subject to an important limitation found at 42 U.S.C. § 1396a(f). Under this provision (known as the Section 209(b) option), a state may provide Medicaid coverage only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. Schweiker v. Gray Panthers, 453 U.S. 34, 38-39, 101 S.Ct. 2633, 2637-38, 69 L.Ed.2d 460. Congress offered states the Section 209(b) option when it expanded the Medicaid program in 1972. The fear was that states "would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance." Id. at 38, 101 S.Ct. at 2637. Indiana is a Section 209(b) state.
 
 
 6
 It is necessary for the purposes of this appeal to examine 42 U.S.C. § 1396a(f) (the Section 209(b) provision) in some detail.[2] As noted above, the normal rule is that a state must provide coverage to the categorically needy, defined generally to include persons who are receiving, or are eligible to receive, SSI or AFDC benefits. 42 U.S.C. § 1396a(a)(10)(A).[3] Section 209(b), which begins "Notwithstanding any other provision of this subchapter," serves as an exception to Section 1396a(a)(10)(A), which would otherwise be applicable law. There is an important qualification, however, on the Section 209(b) exception--even though a state can retain its 1972 standards, it must perform an "income spend down" when calculating available income by deducting "incurred expenses for medical care." In this sense the Section 209(b) exception resembles the optional medically needy provision found at Section 1396a(a)(10)(C), which also requires income to be offset by incurred medical expenses.[4] The income spend down requirement under Section 209(b) must be distinguished from the resource spend down rule that plaintiffs in this case apparently assert that Indiana must adopt. Although in individual cases it may be difficult to distinguish income from resources, the two rules are quite different.
 
 
 7
 To summarize, after the 1972 amendment to the Medicaid Act, a state could choose what might be called the "SSI option" with regard to the categorically needy, or it could choose the "Section 209(b) option." Under the SSI option, a state must give Medicaid assistance based on the somewhat higher SSI income and resource standards--but it does not have to offset incurred medical expenses from income in determining Medicaid eligibility. Under the Section 209(b) option, a state can employ more stringent income and resource standards for eligibility as long as they are no more stringent than its January 1, 1972, standards, but is required to offset incurred medical expenses from income. See generally 42 C.F.R. § 435.1(d).B. Indiana's First Day of the Month Rule
 
 
 8
 To qualify for Medicaid, an applicant must meet both an income eligibility test and a resource eligibility test; if either the applicant's income or the value of his resources (assets) is too high, then he does not qualify for Medicaid. See Medicare & Medicaid Guide p 14,311 (CCH 1992). Indiana currently calculates resources in accordance with the following rule:
 
 
 9
 (a) An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all non-exempt resources exceeds the applicable limitation, set forth below, on the first day of the month:
 
 
 10
 (1) $1,500 for the applicant or recipient, * * *; or
 
 
 11
 (2) $2,250 for the applicant or recipient and his spouse.
 
 
 12
 470 Ind.Admin.Code § 9.1-3-17 (1988). Indiana adopted this rule in 1984, apparently under pressure from the federal Health Care Finance Authority.[5] The application of this rule to the real parties in interest in this case is described below.
 
 1. The Beall Sisters
 
 13
 The Beall sisters are now deceased; plaintiff Eleanor Roloff is the legal representative of the estates of Beatrice and Bernice Beall.[6] On April 1, 1986, Bernice had a bank account balance of $2,879.90. On April 3, 1986, Robert Roloff, Bernice's nephew, executed an irrevocable funeral trust agreement in the amount of $2,879.90, thereby depleting her bank account. Bernice applied for Medicaid on April 30, 1986, and was denied assistance for the month of April because her bank account balance on April 1, 1986, exceeded $1,500. The creation of the irrevocable funeral trust agreement on April 3 was deemed irrelevant.
 
 2. Robert and Dorothy Unger
 
 14
 Plaintiff R. Dianne Strickland is the legal guardian of her mother Dorothy Unger. Her father Robert Unger is now deceased. During 1989, Dorothy Unger lived at a nursing home, while Robert lived in his home. Medicaid applications for the Ungers were filed in May 1989. Their applications were denied for February 1989 through July 1989 because their countable resources in those months exceeded the statutory maximum for a married couple, $2,250. Their resources for these months included two life insurance policies and several bank accounts, and had a total combined value ranging from $2,336 to $3,707. The Ungers became eligible for Medicaid assistance beginning in September 1989. In 1989, Robert Unger apparently had a "countable" income of $1,290.02 per month and Dorothy Unger had an income of $406 per month.[7]
 
 C. Definitions
 
 15
 Analysis of the issues raised by plaintiffs is made difficult by the intricacy of the Medicaid Act, plaintiffs' confusing line of argument, and the fact that plaintiffs and defendants seem to ascribe different meaning to the same terms. It is therefore necessary to define some terms with precision in order to wade through the quagmire.
 
 1. Income Spend Down
 
 16
 Income spend down is the process whereby an applicant's income is reduced for the purposes of determining Medicaid eligibility by the amount of incurred but unpaid medical expenses not covered by third-party payers. When income spend down is used, a recipient's Medicaid payments are reduced by the applicant's excess income. See 42 C.F.R. § 435.831. As an example, consider an applicant who earned $1,000 in a particular month and incurred $5,000 in medical bills in that month, and assume the income eligibility standard is $600. Assuming also that all other eligibility requirements are met, $4,600 of the medical bills would be eligible for Medicaid reimbursement after deduction of the excess income.
 
 2. The First Day of the Month Rule
 
 17
 Plaintiffs seem to equate the first day of the month rule with Section 9.1-3-17, and challenge its lawfulness based on what it omits (e.g., a resource spend down policy and conditional eligibility). Defendants, on the other hand, refer to the first day of the month rule as a matter of timing, and discuss separately the resource spend down and conditional eligibility issues. We think it makes more sense to adopt plaintiffs' general approach, because there is considerable if not complete overlap of the various issues. When necessary, we will discuss plaintiffs' more specific challenges to the rule's omissions separately.
 
 3. Resource Spend Down
 
 18
 "Resource spend down" is a term with chameleon-like flexibility. Generally speaking, a resource spend down rule allows Medicaid applicants to offset their resources by incurred but unpaid medical bills. Recently, an Indiana Court of Appeals held that Indiana allowed a resource spend down in January 1, 1972. Indiana Dep't of Public Welfare v. Payne, 592 N.E.2d 714 (Ind.App.1992). The Medicaid applicant in Payne had accumulated approximately $150,000 in medical bills during a five-month hospital stay. He was denied Medicaid eligibility because his resources exceeded $1,500 on the first of each of those months. The total amount of excess resources for those five months was around $4,000. Id. at 720-721. The court decided that Payne was due benefits, stating that Indiana "must allow Payne to spend down his excess resources to become eligible for Medicaid." Id. at 724. In other words, once Payne applied his excess resources toward his medical bills, under Indiana's rules in 1972, the remaining $146,000 in medical bills would have been eligible for Medicaid reimbursement. Id. at 721.
 
 
 19
 The state of Illinois uses a "resource spend down" policy that works differently than the system described in Payne. In Hession v. Illinois Dep't of Public Aid, 129 Ill.2d 535, 136 Ill.Dec. 65, 72, 544 N.E.2d 751, 758, Illinois' resource spend down was described as follows:
 
 
 20
 [B]y allowing an applicant to spend down the assets above the disregard with incurred medical expenses, the applicant is entitled to Medicaid benefits once the medical expenses exceed the excess in assets.
 
 
 21
 This type of resource spend down is similar to an insurance deductible. Unlike the system described in Payne, Illinois apparently does not require proof of actual spend down before paying the applicant's medical bills.[8] From the perspective of the applicant, the only difference is one of timing. The medical provider would presumably prefer Indiana's old system because it gives an incentive to the applicant to pay his "portion" of the medical bills sooner.
 
 
 22
 Illinois' resource spend down applies only to medical debts. The discussion in Payne does not indicate such a limitation, but the facts of that case only involved medical debts. Unless otherwise specified, we limit our discussion of resource spend down to medical debts. This was the approach of the district court, which stated that "Because Indiana does not allow applicants to spend down their resources, offsetting them against incurred medical expenses, the Ungers' available resources for February-August, 1989 were not decreased by their [nursing home debts]." 772 F.Supp. at 1087. Limiting spend down to medical debts is also consistent with an income spend down, which is limited to medical debts.
 
 4. Conditional Eligibility
 
 23
 In a sense, conditional eligibility is another form of resource spend down (though not limited to medical debts). The basic idea of conditional eligibility is that applicants may receive Medicaid eligibility by expressly agreeing to dispose of their excess resources promptly. In particular, plaintiffs point to the SSI regulations at 20 C.F.R. §§ 416.1240-416.1244, which provide for a limited entitlement to SSI payments when an applicant's resources exceed the allowable amount. To qualify under the regulation, no more than one-fourth of the applicant's resources must be "liquid," and the applicant must agree in writing to dispose of his non-liquid resources within a specified period of time (three months for personal property and nine months for real property). § 416.1240. After liquidation, the applicant agrees "to repay that portion of the payments that would not have been made had the disposition occurred at the beginning of the period for which payment was made."[9] § 416.1244.
 
 III.
 
 24
 The main basis for plaintiffs' challenge to the first day of the month rule is that it is more restrictive than the rule in effect in Indiana on January 1, 1972. As a corollary to this argument, plaintiffs assert that if the rule is permissible because it is part of the SSI program, then Indiana must also adopt other parts of the SSI program, including the so-called conditional eligibility option discussed above. Plaintiffs also argue that the rule fails to meet the requirements of 42 U.S.C. § 1396a(a)(17).[10]
 
 A. Section 209(b)
 
 25
 Plaintiffs argued in district court that Indiana is violating Section 209(b) because it uses more restrictive criteria than those it used on January 1, 1972. The judge below declined to reach that issue, determining that the fact that the first day of the month rule is an SSI rule makes it proper for Indiana to implement the rule. On appeal, plaintiffs embellish their argument somewhat, contending that Indiana cannot pick and choose SSI rules but rather must take them all (or at least all not blatantly contradictory to the Medicaid scheme). According to plaintiffs, "Indiana may continue under its 1972 policies, pursuant to § 209(b), or it may adopt * * * the SSI scheme. * * * Indiana must choose one of the two alternatives. The State may not retain its § 209(b) status and then impose selected SSI rules which combine to produce a Medicaid system more restrictive than that operated by the State on January 1, 1972." Defendants counter that Section 209(b) is solely an exception to what would otherwise be mandatory coverage under the Medicaid Act, and claim that a state may pick and choose any SSI rules it wishes, even if they are more restrictive than those in effect on January 1, 1972.
 
 
 26
 At bottom, plaintiffs argue that Section 209(b) is not really an exception to the receipt of benefits by the "categorically needy" but is an alternate basis upon which a Medicaid applicant may become entitled to medical benefits. That is, plaintiffs contend that even if an applicant would not be considered categorically needy, the applicant would be entitled to benefits in a Section 209(b) state if he would have been entitled under that state's January 1, 1972 Medicaid standards. Plaintiffs rely on the presence of the income spend down requirement in Section 209(b) as evidence that Section 209(b) is independent of the strict categorically needy option. This is perhaps a plausible interpretation of the statute. The weight of authority, however, supports the defendants' interpretation of Section 209(b) as an exception to the coverage of the categorically needy. The Supreme Court has consistently characterized Section 209(b) as a means whereby states can restrict Medicaid coverage. Gray Panthers, 453 U.S. at 38, 101 S.Ct. at 2637; Atkins v. Rivera, 477 U.S. 154, 157, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131. In addition, the Fourth Circuit has explicitly held that "Section 209(b) does not provide an independent basis for Medicaid eligibility, but is merely an exception that permits States to exclude those individuals who would not have been eligible for Medicaid in 1972 prior to the passage of the SSI Act." Morris v. Morrow, 783 F.2d 454, 459 (4th Cir.1986); see also Savage v. Toan, 795 F.2d 643, 645 (8th Cir.1986) ("if an individual does not meet SSI's eligibility requirements, then § 209(b) is not applicable.").[11]
 
 
 27
 Therefore Section 209(b) is properly understood as an exception to the otherwise applicable rule that a state must provide Medicaid assistance to the categorically needy, somewhat imprecisely defined for our purposes as those entitled to receive SSI benefits.[12] Section 209(b) does not guarantee any benefits to anyone. Because the SSI regulations include a first day of the month rule, it can be said that the federal government "uses" that rule under Medicaid because of the link between SSI eligibility and Medicaid eligibility under Section 1396a(a)(10)(A). As the MCCA now makes clear, the rule is optional for Section 209(b) states. But a state is not required to use less restrictive criteria of eligibility for Medicaid in its exempt domain than the federal government uses in its nonexempt domain. Section 209(b), an exemption, cannot reasonably be read to be a means for expanding, rather than restricting, the class of applicants eligible for Medicaid.
 
 
 28
 The exception embodied in Section 209(b) works, we believe, in the following manner:
 
 
 29
 1) Does the "otherwise applicable law" apply, i.e., is the applicant categorically needy at the time of application? If no, then the applicant is not entitled to Medicaid coverage (unless she is medically needy and lives in a medically needy state). If yes, continue to the next step.
 
 
 30
 2) Does the exception apply, i.e., even if the applicant is categorically needy, would the applicant have been entitled to benefits under the January 1, 1972 rules? If no, then the applicant is not entitled to Medicaid coverage. If yes, the applicant is entitled to Medicaid coverage.
 
 
 31
 Under this algorithm, the Section 209(b) exemption is inapplicable only to an applicant who (1) is entitled to receive SSI benefits under current federal standards, and (2) would have been entitled to receive Medicaid benefits under the state's January 1, 1972 regulations. An applicant who meets both requirements above is entitled to receive Medicaid benefits in a Section 209(b) state. Unfortunately for plaintiffs, they have failed to show that they satisfy either requirement.
 
 
 32
 The major failing of plaintiffs' case is that they have not shown that they were entitled to receive SSI benefits for the months in which they were denied Medicaid benefits. The record does not indicate whether they were receiving SSI benefits during those months, or would otherwise have been classified as categorically needy. Indeed, it appears certain that the Ungers earned too much income to qualify for SSI benefits.
 
 
 33
 In addition, the status of Indiana's law in 1972 is unclear. The parties treated the issue as a factual matter, although it is really a legal issue. What the state of the law was at a particular date is not a question for a fact-finder--qualified immunity cases are analogous, and we do not ask the jury to decide whether a particular constitutional right was clearly established at some prior time. Maust v. Headley, 959 F.2d 644, 649 (7th Cir.1992). Since it is not absolutely necessary, and since the parties give us no guidance on the matter, we do not decide this legal question.[13]
 
 
 34
 We have reservations about accepting defendants' assertion that a Section 209(b) state can "pick and choose" selected SSI rules.[14] As noted above, a Medicaid applicant in Indiana who 1) is eligible for SSI benefits under current federal regulations, and 2) would have been eligible for Medicaid benefits under Indiana's rules in effect on January 1, 1972, is entitled to receive Medicaid benefits. Picking and choosing SSI rules would be unlawful if it caused Indiana to deny Medicaid eligibility to individuals who meet both requirements above.[15]
 
 
 35
 Our resolution of the Section 209(b) issue therefore prevents us from giving blanket approval to Indiana's first day of the month regulation. Since the district court certified a class challenge to the first day of the month rule, the prudent course is to narrow the class definition to include only those similar to the named plaintiffs--namely, those persons denied Medicaid benefits because of the first day of the month rule who also did not qualify for SSI benefits. We leave for another day the claims of persons (if any) who would be eligible both for SSI benefits under current federal standards and for Medicaid benefits under the rules in force in Indiana at the beginning of 1972, but to whom Indiana has denied Medicaid eligibility.
 
 B. Section 1396a(a)(17)
 
 36
 The plaintiffs also argue that Indiana's use of a first day of the month rule violates 42 U.S.C. § 1396a(a)(17), which requires states to set "reasonable standards" and "provide for reasonable evaluation of any * * * income or resources." We conclude that Section 1396a(a)(17) has not been violated. Although plaintiffs repeatedly point to a lack of any statutory authority for the rule, this omission in the statute is not fatal for defendants. Absence of permission is not the same as prohibition in this context; the first day of the month rule is a convenient means of determining the level of income and resources for a given month. Indiana is not required to adopt a more complicated rule. See Mattingly v. Heckler, 784 F.2d 258, 265 (7th Cir.1986). An Indiana appellate court also has specifically upheld the reasonableness of the first day of the month rule. Glaser v. Indiana Dep't of Public Welfare, 512 N.E.2d 1128 (Ind.App.1987).
 
 
 37
 It is appropriate to discuss specifically the reasonableness of Indiana's failure to allow a resource spend down, a topic not reached in Glaser. Although it presents a closer case, we also conclude that Indiana's failure to adopt a resource spend down rule does not violate Section 1396a(a)(17). One court has noted, "It makes no sense to find that someone with $10,000 in assets, but $42,000 in medical bills is not needy, while finding that someone with $2,999 in assets and $3,001 in medical bills is needy." Harriman v. Maine Dep't of Human Services, No. 90-0046-B, slip op. at 6, 1990 WL 284515 (D.Me. November 9, 1990).[16] The fact that the Medicaid statute is silent concerning the use of a resource spend down, however, has convinced most courts that the rule is permitted, but not required, by the Act. See, e.g., Hession v. Illinois Dep't of Public Aid, 129 Ill.2d 535, 547, 136 Ill.Dec. 65, 71, 544 N.E.2d 751, 757 (1989); Haley, 476 N.E.2d at 578. In addition, the Supreme Court has instructed that the Department of Health and Human Services' construction of what constitutes available resources under Section 1396a(a)(17) is subject to great deference. Gray Panthers, 453 U.S. at 44, 101 S.Ct. at 2640-41. We therefore conclude that a resource spend down policy is not required by Section 1396a(a)(17).
 
 IV.
 
 38
 For the foregoing reasons, the judgment of the district court is affirmed, with the reservation that the class represented by the named plaintiffs is narrowed to include only those persons not entitled to be classified as categorically needy.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The district court rejected plaintiffs' claims based on the Administrative Procedure Act and under the Fifth and Fourteenth Amendments. Plaintiffs do not appeal these rulings
 
 
 [2]
 42 U.S.C. § 1396a(f) is quoted below:
 Notwithstanding any other provision of this subchapter, * * * no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. * * * In States which do not provide medical assistance to individuals pursuant to paragraph (10)(C) of [subsection (a) of this section], an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under paragraph (10)(A) of that subsection.
 
 
 [3]
 Section 1396a(a)(10)(A) provides that "a state plan for medical assistance must * * * provide--(A) for making medical assistance available * * * to--(i) all individuals * * * (II) with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter * * *."
 
 
 [4]
 This similarity between the medically needy and Section 1396a(f) explains the perhaps misleading language found in Winter v. Miller, 676 F.2d 276, 278 (7th Cir.1982): " § 209(b) required states to operate a program assisting the medically needy. Providing Medicaid coverage to the medically needy was no longer optional for states using the § 209(b) option." This is not exactly accurate; as we stated above, Indiana uses the Section 209(b) option yet does not provide Medicaid coverage to the medically needy. It is more accurate to say that states must perform an income spend down under both Section 209(b) and the medically needy option. We do note that, although defendants assert that Section 209(b) and the medically needy option are diametrically opposed, because the former serves to limit Medicaid coverage whereas the latter serves to expand it, they fail to explain why a number of states have chosen both options
 
 
 [5]
 Federal regulations governing the SSI program incorporate a similar rule whereby income and resources are calculated on the first day of the month. See 20 C.F.R. §§ 416.1207(a)-(c)
 
 
 [6]
 The facts for Bernice Beall and her sister Beatrice are exactly the same
 
 
 [7]
 This information is contained in a March 23, 1990, decision by the Indiana Department of Public Welfare, but was not mentioned by either party before this Court
 
 
 [8]
 The Illinois Administrative Code describes Illinois' resource spend down policy in some detail. 89 Ill.Admin.Code Ch. I, § 120.60
 
 
 [9]
 Although plaintiff does not discuss them, Indiana's Medicaid regulations in 1979 seemed to implement a similar system, allowing eligibility for applicants with excess personal property if
 (a) Such property cannot be reduced or adjusted to the amount allowable within the established time standards for processing applications;
 (b) The applicant agrees that repayment of medical payments made on his/her behalf will be made to the County Department when the excess resources are actually available following the adjustment; and
 (c) It is anticipated that such individual will remain eligible for assistance after such expenditure of the excess resources.
 
 
 [470]
 Ind.Admin.Code 9-3-2(22.2) (1979)
 
 
 [10]
 This provision provides that a state plan must
 include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient * * *, [and] (C) provide for reasonable evaluation of any such income or resources * * *.
 42 U.S.C. § 1396a(a)(17).
 
 
 [11]
 Plaintiffs argue that Morris and Savage were effectively overruled by Section 303(e)(5) of the 1988 Medicare Catastrophic Coverage Act ("MCCA"), Pub.L. No. 100-360, 42 U.S.C. § 1396a(r)(2). This provision provides that
 (2)(A) The methodology to be employed in determining income and resource eligibility under subsection * * * (f) of this section * * * may be less restrictive, and shall be no more restrictive, than the methodology--
 (i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program * * *,
 (B) For purposes of this subsection * * *, methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and not individuals who are otherwise eligible are made ineligible for such assistance.
 There is an obvious tension between this provision and Section 209(b). Mowbray v. Kozlowski, 914 F.2d 593, 599 (4th Cir.1990). We need not address that tension, because plaintiffs explicitly decline to argue that the MCCA effectively repealed Section 209(b). Plaintiffs concede, despite language apparently to the contrary in Section 1396a(r)(2), that a state under Section 209(b) may apply more restrictive methodologies if those methodologies were employed in 1972. Given this concession, the only relevant change made by the MCCA is that Section 209(b) states can apply less restrictive criteria if they wish. This change in the law does not affect the relationship between Section 209(b) and the SSI option, at least for states such as Indiana which do not wish to be less restrictive.
 
 
 [12]
 We do not presume to parse the "labyrinthian" Medicaid statute to decide exactly how one qualifies as categorically needy
 
 
 [13]
 We do note that there have been a number of cases that have held that Indiana used a resource spend down rule on January 1, 1972. Most recently, as indicated above, the Indiana Court of Appeals concluded "that the State's plan in effect on January 1, 1972, allowed applicants to spend down excess resources to become eligible for Medicaid benefits." Payne, 592 N.E.2d at 722. The named plaintiffs, however, have not shown any injury by Indiana's failure to use a resource spend down rule because they have not shown that they qualified for SSI benefits
 
 
 [14]
 We reject outright defendants' apparent argument that the first day of the month rule is not subject to Section 209(b) analysis because it is a "neutral administrative rule." There is nothing neutral about Indiana's decision whether or not to use a resource spend down policy. Defendants offer no authority for their argument that the "neutrality" of a rule is relevant, and nothing in Section 209(b) or elsewhere in the Medicaid Act supports the argument. The fact that some applicants may be better off under the first day of the month rule is irrelevant, since Section 209(b) focuses on whether an individual would have qualified on January 1, 1972, not on the cumulative effects on all applicants of any change in the state's regulatory scheme
 
 
 [15]
 This does not mean that Indiana must incorporate into its Medicaid program the SSI conditional eligibility regulations at 20 C.F.R. §§ 416.1240-416.1244. The basis for this argument is apparently the idea that Section 209(b) serves as an independent basis for Medicaid eligibility, and not as an exception, which is incorrect
 
 
 [16]
 It is true that a person can avoid the effects of a Medicaid system that does not have a resource spend down rule by promptly paying medical bills as they become due. For some persons this might be possible, but for many applicants the physical, psychological, and economic realities of the situation make prompt payment of medical bills very difficult. See Haley v. Commissioner of Public Welfare, 394 Mass. 466, 476 N.E.2d 572, 578 n. 8 (1985) (noting the "unreasonableness" of a denial of Medicaid benefits to an applicant with $500 excess resources and $17,500 in hospital bills when the applicant "was incapable of spending down her resources"). Assume that a person has no medical insurance, $2000 in the bank, and a life insurance policy with a cash value of $2000, and unexpectedly required complex emergency treatment. This person might receive a hospital bill of $10,000 on the 25th of the month, but would not be able to get Medicaid benefits for the following month unless he was able to cash in his life insurance and reduce his resources to less than $1,500 by the end of the month. It would be unlikely for that person to even discover the procedure to cash in a life insurance policy in a scant five days, putting to one side the physical limitations to which he might be subject