### INDIANA DEPARTMENT OF PUBLIC WELFARE, Appellant (Defendant Below),

v.

### Hazen PAYNE, Appellee (Plaintiff Below).

### No. 49S02–9310–CV–1112.

Supreme Court of Indiana.

Oct. 18, 1993.

Pamela Carter, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellant.

Scott R. Severns, Severns Associates, Indianapolis, for appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

Seeking clarification of certain state and federal Medicaid eligibility requirements, the Defendant–Appellant Indiana Department of Public Welfare ("the Department") petitions for transfer following the Court of Appeals' partial affirmance of the entry of summary judgment against it in favor of Plaintiff–Appellee Hazen Payne. *Indiana Dep't of Pub. Welfare v. Payne* (1992), Ind.App., 592 N.E.2d 714, *reh'g denied* (1992), 598 N.E.2d 608.

In resolving this dispute, we are confronted with two questions. The first, a state law issue, is whether a financially ineligible Indiana Medicaid applicant, in order to establish eligibility, may spend down[1] that portion of his resources exceed-ing a state-established standard resource allowance. The second question asks whether an Indiana Medicaid applicant must first meet all threshold federal eligibility requirements before utilizing a less restrictive state provision to qualify for medical assistance.

In July, 1988, Payne was diagnosed as having leukemia and was hospitalized for most of the next five months, during which time he underwent chemotherapy. A divorced construction laborer, Payne had no health insurance, and his hospital and medical expenses totalled $149,968.36. In October, 1988, Payne applied for Medicaid assistance through the Monroe County Welfare Department which recognized his eligibility effective December 1, 1988, but denied benefits for the preceding five months, citing Payne's resources in excess of the applicable standard allowance on the eligibility determination day of these months.

Payne's appeal to an administrative law judge was denied on April 28, 1989, as was his final administrative appeal to the State Board of Public Welfare on July 10, 1989. Payne sought judicial review, and on February 5, 1991, the Marion County Superior Court reversed the administrative determination and remanded the case to the Department for further proceedings. Subsequently, the Department sought relief from our Court of Appeals which affirmed, in relevant part, that Payne should have been allowed to spend down his excess resources to meet Medicaid eligibility requirements. *Payne*, 592 N.E.2d at 714. On rehearing, our Court of Appeals further determined that federal law allows Indiana to employ methods of determining income and resource eligibility for Medicaid that are more liberal than those used by states adopting the corresponding federal means for determining eligibility. *Payne*, 598 N.E.2d at 608. It is from these decisions that the Department seeks further review. We grant transfer.

[1] "Resource spend-down," if available, favors a Medicaid applicant whose assets exceed the maximum allowable resource level (the standard allowance) for determination of Medicaid eligibility. In general, an applicant exercising resource spend-down would apply his incurred medical expenses as a setoff against his excess resources for the relevant period.

## Applicable Federal and State Medicaid Law

Our analysis first necessitates an overview of the intricate interrelationship between the relevant federal statutes and state provisions governing Medicaid.[2] In 1965, the United States Congress amended the Social Security Act by adding Grants to States for Medical Assistance Programs, 42 U.S.C. § 1396 *et seq.* (Supp.1965–68) as a cooperative program between the federal government and states to provide medical assistance to individuals who were receiving benefits under any one of four welfare programs established elsewhere in the Social Security Act. In 1972, Congress restructured Medicaid by replacing three of these four programs with a new federal program entitled Supplemental Security Income for the Aged, Blind, and Disabled ("SSI"), 42 U.S.C. § 1381 *et seq.* (Supp. 1974). For many states, SSI greatly increased the number of potentially eligible Medicaid recipients. Congress, concerned that some states might discontinue participation in Medicaid if required to bear the increased costs of providing benefits to everyone eligible for SSI, offered states the option of providing Medicaid assistance only to those individuals who would have been eligible under the state's Medicaid plan in effect on January 1, 1972. 42 U.S.C. § 1396a(f) (Supp.1974) (commonly known as the "Section 209(b) option"[3]).

Under Section 209(b) a state could retain its 1972 Medicaid eligibility requirements but could not implement requirements more restrictive than its 1972 provisions or more liberal than the SSI requirements.[4] Indiana elected to continue participation in Medicaid under Section 209(b). Ind.Code § 12–15–2–6.

## State Law Question

Indiana's resource spend-down provision in effect in 1972 provides in part:

(c) Possession of intangible personal property with an available liquid cash value in excess of the standard resource allowance shall render an applicant ineligible for assistance, and utilization of some of the resources down to the amount of the standard resource allowance is necessary before the applicant can be found eligible.

(d) Possession of intangible personal property with an available cash value which has increased to be in excess of the standard resource allowance shall not make a recipient ineligible for assistance providing the recipient is willing to make the necessary adjustments and taken immediate steps to do so.

*Burns' Ind. Admin. Rules and Regulations,* Rule (52–1206)–2 (Supp.1975) ("the 1972 Rule").

---

2. A more detailed presentation of the statutory background of the Medicaid program may be found in *Indiana Dep't of Pub. Welfare v. Payne* (1992), Ind.App., 592 N.E.2d 714, *reh'g denied* (1992), 598 N.E.2d 608, and *Roloff v. Sullivan* (7th Cir.1992), 975 F.2d 333.

3. The "Section 209(b)" label comes from the Code's predecessor, Law of Oct. 30, 1972, Pub.L. No. 92–603, § 209(b), 86 Stat. 1329, 1381–82.

4. Section 209(b)'s prohibition of state enforcement of Medicaid eligibility requirements more restrictive than those in effect on January 1, 1972, is derived from the following provisions:

Section 209(b) ... permits States to limit Medicaid eligibility for the aged, the blind, or the disabled to individuals who meet eligibility requirements more restrictive than those under SSI....

42 C.F.R. § 435.1(d)(3) (1992).

The [State] agency may use Medicaid eligibility requirements for the aged, blind, or disabled that are more restrictive than the eligibility requirements for SSI....

42 C.F.R. § 435.121(a) (1992).

If a[ ] [State] agency uses more restrictive requirements under this section—

(1) Each requirement may be no more restrictive than that in effect under the State's Medicaid plan on January 1, 1972, and no more liberal than that applied under SSI....

42 C.F.R. § 435.121(c)(1) (1992).

[N]o State not eligible to participate in the State plan program established under subchapter XVI ... shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month....

42 U.S.C. § 1396a(f) (Supp.1974).

The Department argues that Indiana's 1972 spend-down provision is ambiguous and thus should be subject to administrative rather than judicial interpretation unless plainly erroneous or inconsistent with the rule itself. The Department urges that the trial court's *de novo* review of Indiana's Medicaid provisions effective on January 1, 1972, was improper because the issue is one of fact rather than law.

The Department further argues that the 1972 Rule's language "utilization of some of the resources down to the limit of the standard resource allowance" was too broadly construed by the Court of Appeals. The Department contends that a state Medicaid regulation issued in 1984, in effect in 1988 at the time of Payne's application for assistance, limits the interpretation of the 1972 Rule. This regulation states in pertinent part:

(a) An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all non-exempt resources exceeds the applicable limitation, set forth below, on the first day of the month:

(1) $1,500 for the applicant or recipient, including the amount determined in (b) below, if applicable; or

(2) $2,250 for the applicant or recipient and his spouse.

Ind.Admin.Code tit. 470, r. 9.1–3–17 (1988) ("the 1988 Rule") (current version at Ind.Admin.Code tit. 405, r. 2–3–15 (1992)).

Specifically, the Department argues that the Court of Appeals improperly interpreted "utilization of some of the resources down to the limit of the standard resource allowance" to permit the application of incurred medical expenses as an offset to excess resources. The Department, applying the 1988 rule, posits that the term "utilization" means liquidating resources and actually making payment toward medical expenses to reduce resources to the maximum eligibility level by the first day of the month in order to qualify for Medicaid assistance for that month. The Department urges that under this interpretation, Payne, who did not liquidate resources or actually pay toward medical expenses by

the first day of the months at issue, is therefore ineligible for Medicaid assistance for those months.

Payne responds that resource spend-down was permitted under the 1972 Rule, and that, as a result, the Department may not now, through application of the 1988 Rule, disallow resource spend-down because such a prohibition, under Section 209(b), would be impermissibly more restrictive of his Medicaid eligibility than Indiana's 1972 provisions. Accordingly, he urges that he should be allowed to apply his incurred but unpaid medical expenses as an offset to his resources in determining his eligibility for Medicaid assistance. Payne in effect calculates that each dollar of his resources above the standard allowance should be figuratively "erased" by applying a corresponding dollar from his medical expenses (reducing his otherwise eligible medical expenses by a like amount) until his resources "diminish" to the resource limitation level. Payne contends that the trial court's judgment on this issue in his favor was properly entered as a matter of law.

■ A determination of the status of Indiana legislation in 1972 is a question of law, one properly subject to *de novo* analysis upon judicial review. *Stockton v. Department of Pub. Welfare* (1988), Ind.App., 533 N.E.2d 148, 151. Moreover, while a reviewing court owes some deference to an administrative agency's conclusions of fact, no such deference need be accorded an agency determination of a matter of law. *Board of Trustees of Pub. Employees' Retirement Fund of Ind. v. Miller* (1988), Ind., 519 N.E.2d 732, 733.

■ Resolution of the state law question requires that we first interpret the 1972 Rule. In interpreting an administrative regulation, the rules applicable to construction of a statute apply to construction of the regulation. *Empire Gas of Rochester, Inc. v. State* (1985), Ind.App., 486 N.E.2d 1036, 1044; *Indiana State Dep't of Welfare, Medicaid Div. v. Stagner* (1980), Ind.App., 410 N.E.2d 1348, 1352. Therefore, just as a statute susceptible to more

than one interpretation is ambiguous and open to construction, *P.B. v. T.D.* (1990), Ind., 561 N.E.2d 749, 750, an administrative regulation subject to multiple interpretations is likewise ambiguous and open to construction. The language of the 1972 Rule pertaining to "utilization of some of the resources down to the amount of the resource allowance" is ambiguous, thus warranting our construction.

The 1972 Rule establishes that possession of intangible personal property in excess of the standard resource allowance renders a Medicaid applicant ineligible for assistance. However, the rule also provides that "utilization of some of the resources down to the amount of the standard resource allowance is necessary before the applicant can be found eligible." *Burns' Ind. Admin. Rules and Regulations,* Rule (52–1206)–2(c) (Supp.1975).

■ We find that this regulation permits a Medicaid applicant, under circumstances discussed *infra,* to spend down resources exceeding Indiana's standard resource allowance to establish eligibility for Medicaid assistance. This provision essentially affords an applicant, ineligible because of excess resources, a potential means to "cure" the disqualification which otherwise would preclude the availability of Medicaid assistance. There is nothing in the language of the 1972 Rule which either by express terms or unmistakable implication constrains us to interpret "utilization of some of the resources down to the amount of the standard resource allowance" as requiring a Medicaid applicant to liquidate resources and make a payment toward medical expenses before Medicaid eligibility can be established. We agree with the Court of Appeals that an applicant's failure to liquidate resources and make medical payments "does not suggest that an applicant would be denied medical assistance for the month requested and that the applicant would have to reapply after the excess resources were spent down...." *Payne,* 592 N.E.2d at 722.

Moreover, we note that, prior to the administrative hearing, the Department, when requested to admit that the resource spend-down provision had been a part of the state's Medicaid program as of January 1, 1972, did not deny this request but merely produced copies of applicable regulations in effect in 1972. We also observe that the Department's Medicaid Manual, in effect until its 1984 appeal, recognized resource spend-down. Ind.Admin.Code tit. 470, r. 9–3–2(22.2), 9–4–3(12) (1979).

We next address the Department's contention that the 1988 Rule limits construction of the 1972 Rule by requiring a Medicaid applicant to meet the standard resource allowance.

■ In construing a statutory provision, a statute must be considered as a whole, each part examined not in isolation but with reference to all the other companion provisions. *Hinshaw v. Board of Comm'rs of Jay County* (1993), Ind., 611 N.E.2d 637, 639; *Walgreen Co. v. Gross Income Tax Div.* (1947), 225 Ind. 418, 421, 75 N.E.2d 784, 785. This Court will construe an individual provision so as to harmonize it with other sections of the enactment. *Hinshaw,* 611 N.E.2d at 639; *Indiana Dep't of State Revenue v. Indianapolis Pub. Transp. Corp.* (1990), Ind., 550 N.E.2d 1277, 1278.

■ While state participation in Medicaid is voluntary, a state choosing to participate must nevertheless conform to the relevant provisions of federal legislation pursuant to the Social Security Act. *Harris v. McRae* (1980), 448 U.S. 297, 301, 100 S.Ct. 2671, 2679, 65 L.Ed.2d 784, 794. *See also Schweiker v. Gray Panthers* (1981), 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460. A legislative enactment of the U.S. Congress and a state administrative regulation are not fellow components of one provision. Yet, in the present case, because the enabling legislation of the Social Security Act, the Congressional mandate of Section 209(b), and Indiana's 1972 Rule are concurrently applicable, the 1972 Rule must be read in conjunction with and as subject to Section 209(b) provisions. Section 209(b) requires that a state opting to participate in the Medicaid program under its provisions may not establish Medicaid eligibility

more restrictively than the state's eligibility requirements in effect on January 1, 1972.

Applying the 1988 Rule's liquidation and payment limitation to the 1972 Rule to determine Medicaid eligibility in Indiana is plainly more restrictive than applying only the 1972 eligibility requirements. As such, because it fails to conform to the relevant, explicit provisions of Section 209(b), the 1988 Rule may not properly be applied to construe the 1972 Rule.

■ Therefore, because Indiana's Medicaid program in effect in 1972 potentially could have allowed Payne to utilize incurred medical expenses as an offset against his excess resources to establish Medicaid eligibility, the Department's 1988 Rule absolutely precluding his eligibility for Medicaid assistance for any month when the total value of his non-exempt resources exceeded the standard resource allowance is impermissibly more restrictive under Section 209(b) than the 1972 Rule. Unless otherwise ineligible for Medicaid assistance, Payne is entitled to spend down his resources to establish his Medicaid eligibility for the months of July through November of 1988.[5]

### Federal Law Question

The Department contends that a state's Medicaid plan must comply with all requirements established by the U.S. Congress and is subject to approval by the Secretary of Health and Human Services. The Department correctly points out that failure to substantially conform to such requirements could result in a Secretary of Health and Human Services determination that the federal government's contribution to the state's Medicaid administration costs as well as payments to providers of medical assistance be limited or withheld.

The Department directs our attention to *Roloff v. Sullivan* (7th Cir.1992), 975 F.2d 333, a decision rendered shortly after the Court of Appeals published its opinion on rehearing in *Payne*, 598 N.E.2d 608. In *Roloff*, plaintiffs raised concerns about Indiana's determination of Medicaid eligibility with respect to an applicant's resources. Urging *Roloff* as authority, the Department argues that Section 209(b) operates merely as a limited exception within the controlling threshold SSI eligibility requirements rather than providing a state not adopting the SSI guidelines an alternative, independent basis for establishing Medicaid eligibility. The Department asserts that *Roloff* correctly recognizes that the Section 209(b) exemption from SSI eligibility requirements confers Medicaid eligibility only when an applicant meets both the current SSI requirements *and* the Medicaid requirements under the state's January 1, 1972 regulations.

In addition, the Department contends that to permit the 1972 Rule, in combination with Section 209(b), to override primary SSI eligibility requirements would be to inappropriately expand the availability of Medicaid benefits, resulting in additional costs that would become unduly burdensome to the State. The Department further argues that Indiana courts are bound by the federal courts' interpretation of federal legislation, and that to enter a finding inconsistent with *Roloff* would signal Indiana's unwillingness to observe intersovereign deference.

Payne counters, in effect, that Section 209(b) is more than a mere Medicaid administrative exception within the threshold eligibility framework of SSI. Referring to our Court of Appeals' decision on rehearing in *Payne*, at 598 N.E.2d 608, he observes that the Second District properly considered 42 U.S.C. § 1396a(r)(2)[6], construing

---

**5.** We note that while *Roloff v. Sullivan* (7th Cir.1992), 975 F.2d 333, concluded that Indiana is not required to implement a resource spend-down policy, *Roloff* expressly declined to decide the legal question as to the status of Indiana's law in 1972 with respect to resource spend-down.

**6.** 42 U.S.C. § 1396a(r)(2) (Supp.1974) sets forth, in pertinent part:
  (A) The methodology to be employed in determining income and resource eligibility for individuals under [Section 209(b) ] of this section or under section 1396d(p) of this title may be less restrictive, and shall be no more restrictive than the methodology—

this retroactive measure enacted in 1988 to permit Section 209(b) states to implement more liberal income and resource methodologies than those used by SSI states. Payne also criticizes the Department's reliance upon *Roloff*, asserting that the Seventh Circuit was notably cautious in its analysis and that decisions of lower federal courts are not binding upon or, in the present case, persuasive authority for state courts. He further points to other jurisdictions where resource spend-down has been permitted and suggests that adoption of the rationale in *Roloff* would subject needy applicants to tedious parsing of complex SSI regulations.

■ Although U.S. Supreme Court decisions pertaining to federal questions are binding on state courts, lower federal court decisions may be persuasive but have non-binding authority on state courts. *Pennsylvania R.R. Co. v. F.E. Mathias Lumber Co.* (1943), 113 Ind.App. 133, 136, 47 N.E.2d 158, 159. Decisions of the Seventh Circuit are entitled to our respectful consideration; yet, any holding consistent with *Roloff* is the product of substantive agreement on the merits rather than perfunctory deference to the Seventh Circuit.

■ We endorse the Seventh Circuit's conclusion in *Roloff* that SSI eligibility is a threshold requirement to participation in Indiana's Medicaid program. *Roloff*, 975 F.2d at 340–41. In Section 209(b) states such as Indiana, after an applicant has met this threshold eligibility requirement, the inquiry then focuses upon whether the applicant would have been entitled to benefits under Medicaid regulations existent on January 1, 1972. *Id.; Savage v. Toan* (8th Cir.1986), 795 F.2d 643; *Morris v. Morrow* (4th Cir.1986), 783 F.2d 454. Thus, once an applicant has demonstrated SSI eligibility, he is then entitled to utilize Indiana's resource spend-down provision to, in turn, meet Indiana's standard resource allow-

ance which is more restrictive than its federal counterpart.

As noted by our Court of Appeals, 42 U.S.C. § 1396a(r)(2) does permit Section 209(b) states to use more liberal methodologies in determining income and resource standards than those used by SSI states in evaluating Medicaid eligibility. *Payne*, 598 N.E.2d 608. Required resource spend-down is one such more liberal methodology which may be employed by Indiana since SSI permits but does not require resource spend-down. *Roloff*, 975 F.2d at 342. However, we conclude that Indiana did not intend to extend Medicaid eligibility to those who would not even qualify for benefits under SSI's more liberal requirements, because it did not endorse the more restrictive eligibility requirements by opting for participation in Medicaid under Section 209(b). Thus, the resource spend-down component of eligibility employed by Indiana in 1972 applies only after SSI eligibility requirements have been met. To hold otherwise would be to ignore the apparent intent manifested by Indiana's choice to participate in Medicaid as a Section 209(b) state.

We agree with the Court of Appeals' initial opinion, before rehearing, that in 1972 Indiana permitted a spend-down of excess resources to meet Medicaid eligibility and that this provision is potentially available to Payne in the present case. However, in accord with the Seventh Circuit opinion in *Roloff*, we vacate the Court of Appeals opinion on rehearing and instead find that meeting Supplemental Security Income eligibility requirements is a prerequisite for utilization of resource spend-down. We direct the trial court to remand this cause to the Department of Public Welfare for further determinations consistent with this opinion. In all other respects we affirm the judgment of our

---

(i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI of this chapter, or
(ii) in the case of other groups, under the State plan most closely categorically related.

(B) For purposes of this subsection and subsection (a)(10) of this section, methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

Court of Appeals pursuant to Ind.Appellate Rule 11(B)(3).

SHEPARD, C.J., and DeBRULER, GIVAN and KRAHULIK, JJ., concur.