**Elizabeth BROWN, et al., Plaintiffs,**

v.

**Suzanne L. MAGNANT,
et al., Defendants.**

**No. IP 78–773–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 9, 1990.

Dennis K. Frick, Legal Services Organization of Indiana, Indianapolis, Ind., for plaintiffs.

Gordon E. White, Jr., Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM ENTRY

NOLAND, District Judge.

The facts of this case are set forth in this Court's *Judgment Entry* dated March 15, 1979, and *Memorandum Opinion and Order* dated February 16, 1979 (collectively referred to as the "1979 Judgment"), *Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980) (*"Brown I"*), and *Brown v. Smith*, 662 F.2d 464 (7th Cir.1981) (*"Brown II"*); therefore, the Court will not repeat them here.

This case is before the court on the plaintiffs' "Motion to Show Cause Why Defendant Stanton Should Not be Held in Contempt of this Court" and the defendants' "Petition for Relief from Judgment." The only question presented by these motions is whether the state of Indiana, through its Department of Public Welfare, has complied with this Court's 1979 Judgment, and, if not, whether that judgment ought to be modified in light of subsequent events. For the reasons that follow, the Court finds

that the state defendant has failed to fully comply with this Court's 1979 Judgment. The Court also finds, however, that the Court's 1979 Judgment granting permanent injunctive relief must be modified in light of subsequent changes in the law.

### I. *The 1979 Judgment*

This case originally presented two questions relating to the state of Indiana's practice of "deeming" certain income and resources belonging to the spouse of a Medicaid recipient or applicant who has been institutionalized due to illness.

> "Deeming," in the parlance of the Social Security laws and regulations, means that a State determines eligibility by assuming that a portion of the spouse's income is "available" to the applicant. Because an individual's eligibility for Medicaid benefits depends in part on the financial resources that are "available" to him, "deeming ... has the effect of reducing both the number of eligible individuals and the amount of assistance paid to those who qualify."

*Herweg v. Ray*, 455 U.S. 265, 267, 102 S.Ct. 1059, 1062, 71 L.Ed.2d 137 (1982) (*quoting Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981)).

The first issue originally presented was whether the state of Indiana could "deem" income and resources of non-institutionalized spouses as available to their institutionalized spouses (Medicaid recipients) by using a fixed formula that did not take into consideration the actual needs of the non-institutionalized spouse. In *Brown I, supra,* the Seventh Circuit referred to this issue as the first level inquiry. The second issue was whether the State could "deem" income and resources of non-institutionalized spouses to their institutionalized spouses (Medicaid recipients), even though the income and resources "deemed" were not actually paid to the institutionalized spouse. This was referred to as the second level inquiry.[1]

---

1. As to both the first and second level issues, the plaintiffs originally sought recovery under two theories—one statutory, the other constitutional. In its 1979 Judgment, this Court did not address the plaintiffs' constitutional theory. *See Memorandum Opinion and Order,* p. 3 ("Because this Court finds the statutory issue to be dispositive

of the questions presented for resolution, the Court need not and should not reach the plaintiffs' constitutional issues."). The statutory theory was also the sole focus of *Brown I* and *Brown II. See Brown II, supra,* at 468 n. 3 ("We, therefore, emphasize that this case has been

In its 1979 Judgment, this Court addressed only the first level inquiry. The Court held that an individualized factual finding of a non-institutionalized spouse's "needs" was necessary before the state could "deem" a portion of his or her *income or resources* as available to the institutionalized spouse. The Court found that the fixed formula used by the State, which did not take into consideration a non-institutionalized spouse's actual needs, was contrary to the provisions of the Social Security Act, 42 U.S.C. § 1396 *et seq.* This Court did *not* address the second level inquiry as to whether the state may "deem" income and resources that are not actually paid to the institutionalized spouse.

Thus, in its 1979 Judgment, the Court did *not* hold that "deeming" was a *per se* violation of the Social Security Act, nor did it hold that the State may not seek contributions from a non-institutionalized spouse. Rather, the Court held that the *method* then employed by the state to carry out its practice of "deeming" resources and income of the non-institutionalized spouse was in violation of the Social Security Act. Specifically, the Court stated: "It is the arbitrariness and irrebuttable presumptiveness of the established limits as applied to any given case that renders the challenged state regulations invalid." *Id.* at 1227. The Court then granted the plaintiffs' request for a permanent injunction prohibiting the State from enforcing its "deeming" regulations.

After finding the state's regulations invalid, the Court proposed a statutory scheme whereby the state could comply with the provisions of the Social Security Act:

> Thus, to comply with the requirements of Section 1396a(a)(17) of the Social Security Act, the Indiana Department of Public Welfare's regulations that establish guidelines for determining what *re-*

*sources and income* are reasonably available *must* provide for a factual determination *in each case* that gives "due consideration to the individual's obligations and the particular needs of each spouse and family." Such regulations will thereby provide guidelines for determining what resources and income are *actually available* and will be free of the infirmities that plague the present regulations, which only allow for a determination of what resources and income are *considered available.* The contemplated scheme would allow the state to require proof of the particular needs and individual obligations of each spouse and family, and would then deduct these verified sums from the existing resources and income to determine the amount, if any, that is reasonably available for support of the institutionalized spouse.

*Id.* at 7 (emphasis added) (citations omitted). The issue presently before this Court is whether the state defendant has complied with this Court's 1979 Judgment, and, if not, whether the judgment ought to be modified. More specifically, the issue is whether the state defendant has complied with the *resources* (as opposed to the income) provision of this Court's earlier judgment.[2]

## II. *The Appeals*

After this Court's 1979 Judgment, the *plaintiffs* appealed, among other things, this Court's refusal to rule on the issue relating to the second level of deeming. The defendants did not appeal. In *Brown I*, the Seventh Circuit's first opinion in this case, the court affirmed this Court's judgment granting the plaintiffs relief on their claim relating to the first level of deeming. However, the Seventh Circuit went even further. It concluded that this Court had failed to consider the issue relating to the second level of deeming, and that the plaintiffs were entitled to prevail on that issue.

decided as a matter of statutory, and not constitutional, construction. Consistent with footnote 23 in *Gray Panthers,* we too leave appellants' constitutional arguments open to litigation on remand while intimating no opinion as to their merit."). The plaintiffs have abandoned their constitutional theories. *See Plaintiffs' Supplemental Memorandum on Enforcement of the Judgment,* p. 5. Thus, the focus of the remainder of this *Memorandum Entry* will be only on

the statutory theory, *i.e.,* that the State's present practice of "deeming" is contrary to the Social Security Act.

**2.** *See Plaintiff's Supplemental Memorandum On Enforcement of the Judgment,* p. 6 (stating that the "plaintiffs' Motion to Show Cause does not challenge Indiana's compliance with the *income* provisions of this Court's judgment").

The defendants then petitioned for certiorari to the Supreme Court. The Supreme Court granted certiorari, vacated the decision of the Seventh Circuit, and remanded the case to the Seventh Circuit for further consideration in light of *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633 (1981). *Stanton v. Brown*, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). In *Gray Panthers*, the Supreme Court dealt only with the second level of deeming. It held that the state need not make a factual determination that the non-institutionalized spouse's income *actually is contributed* to the institutionalized spouse (Medicaid recipient) before the state can "deem" a portion of the non-institutionalized spouse's income as available to the institutionalized spouse. 453 U.S. at 49, 101 S.Ct. at 2643. The Supreme Court in *Gray Panthers* did *not* address the first level inquiry:

> This case presents the question whether any "deeming" is consistent with the "availability" requirement of subsection (17)(B). We hold that it is. We do not, however, decide whether state plans that set aside inadequate sums for the contributing spouse are consistent with other provisions of the statute, such as the requirement that States "reasonabl[y] evaluate ... income or resources." 42 U.S.C. § 1396a(a)(17)(C). In sum, whatever deficiencies may exist in specific state plans are not at issue in this case.

*Id.* at 49 n. 21, 101 S.Ct. at 2643 n. 21.

On remand, the Seventh Circuit in *Brown II* concluded that the Supreme Court in *Gray Panthers* had not addressed the first level of deeming; thus it expressly reaffirmed this Court's original ruling regarding the first level of deeming. *Brown II*, 662 F.2d at 468 (noting that the Supreme "Court did not reach our first holding requiring an individualized factual determination of the non-institutionalized spouse's needs in computing the potentially available funds subject to deeming"). However, the Seventh Circuit reversed itself on the second level of deeming and found that the plaintiffs were not entitled to judgment on that issue.

The relevant opinions discussed above can be schematically illustrated as follows.

| | First Level (fixed formula issue) | Second Level (actual contributions issue) |
|---|---|---|
| District Court (1979) | Plaintiff Prevails | Not Decided |
| Brown I (7th Cir.) | Plaintiff Prevails | Plaintiff Prevails |
| Gray Panthers (Supreme Court) | Not Decided | Defendant Prevails |
| Stanton v. Brown (Supreme Court) | Brown I vacated and case remanded to 7th Cir. in light of Gray Panthers. | |
| Brown II (7th Cir.) | Plaintiff Prevails | Defendant Prevails (Brown I Rev'd.) |

### III. *The Effect of Subsequent Events*

Having determined that this Court's 1979 Judgment with regard to the first level of deeming has survived *Brown I, Gray Panthers,* and *Brown II,* the Court will now consider what effect, if any, subsequent events have had on this case.

### A. *Public Law 125*

In *Brown I* and *Brown II,* the Seventh Circuit noted that, subsequent to this Court's 1979 Judgment, the Indiana General Assembly enacted Public Law 125 ("the Act"). *Brown I,* 617 F.2d at 1227 n. 4; *Brown II,* 662 F.2d at 468. The Seventh Circuit, however, expressly declined to analyze what impact, if any, the Act has had on this Court's 1979 Judgment granting permanent injunctive relief. *Brown II,* 662 F.2d at 469. This Court will now analyze the impact of the Act as it relates to this Court's earlier judgment.

The Act, which became effective on September 1, 1979, has two effects. First, it requires the state to calculate, using mathematical formulas, the non-institutionalized spouse's *income* that is available for "deeming." *Ind. Code* 12–1–7–18.6; *see also* 470 I.A.C. § 9.1–3–9. The non-institutionalized spouse may then challenge (or rebut) the figure arrived at by the state. Both the plaintiffs and the defendants agree that this statutory scheme, as it applies to *income,* is in compliance with the Court's 1979 Judgment.

The second effect of the Act is to set certain *resource* limits applicable to different types of Medicaid applicants or recipients. *Ind. Code* 12–1–7–18.5; *see also* 470 I.A.C. § 9.1–3–1. For example, an applicant is ineligible for Medicaid if the total value of the resources owned by him and his spouse exceeds $2,250. *Id.* Certain property (such as household goods, personal effects, and principal residence) is excluded from the calculation of resources. *Id.*

It is the section of the Act relating to *resources* that the plaintiffs contend is in violation of this Court's earlier judgment. They point out that the Act does not set forth the *method* by which the resources of the non-institutionalized spouse are to be evaluated in determining whether they are available for "deeming," nor does it provide the non-institutionalized spouse with an opportunity to rebut the availability determination made by the state. The only practical effect that the Act has had with respect to resources is to raise the limit above which resources are "deemed" available to the institutionalized spouse for purposes of calculating his eligibility for Medicaid. Thus, this Court agrees with the plaintiffs' contention that the Act suffers from the same infirmities stated in the 1979 Judgment. Public Law 125, as it applies to *resources,* is contrary to this Court's 1979 Judgment.[3]

### B. *Herweg v. Ray*

In *Herweg v. Ray,* 443 F.Supp. 1315 and 481 F.Supp. 914 (S.D.Iowa 1978), the United States District Court for the Southern District of Iowa held, *inter alia,* that the Social Security Act required the State of Iowa to implement procedures to "provide for a factual determination in each instance of the amount of the spouse's income which is in fact reasonably available for the support of the institutionalized spouse.... Such determinations must give due consid-

---

**3.** Defendant Stanton all but concedes that the Act, as it relates to *resources,* does not comply with this Court's earlier judgment. In a letter addressed to Indiana's county welfare departments and dated August 14, 1979, Stanton wrote.

*Resources of Independent Spouse*
It is important to note that Public Law 125 does *not* allow for disregarding the resources of the independent, non-recipient spouse of a nursing home resident. We realize this is a

major change from the policy implemented as a result of the *Brown v. Stanton* decision but it must be made to ensure that the Welfare Department is in compliance with Indiana law.

\* \* \* \* \* \*

Because Public Law 125 does not exclude from consideration the resources and income of the independent, non-recipient spouse of a MA applicant or recipient who is residing in a

eration to the individual obligations and the particular needs of each spouse and family." 443 F.Supp. at 1319. This Court relied heavily on the *Herweg* case in originally deciding this case. This Court's reliance on *Herweg* is highlighted in the following excerpt from its 1979 Judgment:

> The infirmities in the present regulation are simply that resources and income over certain arbitrary amounts are "deemed" to be available to a noninstitutionalized spouse for contribution toward an institutionalized spouse's expenses, *even though* amounts "deemed" available are subject to certain exemptions and deductions. It is the arbitrariness and irrebuttable presumptiveness of the established limits as applied to any given case that renders the challenged state regulations invalid. As was stated in *Herweg v. Ray, supra* at 1319:
>
>> In the Court's opinion, the state procedure must provide for a factual determination in each instance of the amount of the spouse's income which is in fact reasonably available for the support of the institutionalized spouse. Otherwise the procedures will be in conflict with 42 U.S.C. § 1396a(a)(17). Such determinations must give due consideration to the individual obligations and the particular needs of each spouse and family.
>
> This Court adopts the opinion expressed by the court in *Herweg* and extends its reasoning to include the determination of the amount of resources that are reasonably available for the support of an institutionalized spouse.... "This approach would appear decidedly more flexible and equitable in its overall operation and furtherance of congressional intent." *Herweg v. Ray, supra* at 1320.

*Memorandum Opinion and Order*, pp. 6–7.

After this Court's 1979 Judgment was rendered, the district court's decision in *Herweg* was appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit affirmed in part and reversed in part. 619 F.2d 1265 (1980). The Eighth Circuit's decision was in turn appealed to the Supreme Court.

Shortly after *Brown II* was decided, the Supreme Court decided *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059 (1982). In *Herweg*, the Supreme Court stated:

> We conclude that the Secretary need not interpret [the Social Security Act] to require an individualized factual determination in each instance as to the amount of income of an applicant's spouse that may reasonably be considered available to the applicant.

*Id.* at 278, 102 S.Ct. at 1068. Thus, the bottom line is that the district court's decision in *Herweg*, which this Court relied on to decide this case, has been reversed. In *Herweg*, the Supreme Court concluded that a state, such as Indiana[4], need *not* make an individualized factual determination of the amount of the non-institutionalized spouse's *income* that is in fact reasonably available for the support of the institutionalized spouse. *Id.* The Court sees no reason why an individualized factual determination should be required with respect to the non-institutionalized spouse's *resources* when such a determination is not required with respect to income.

#### C. *Mattingly v. Heckler*

In 1986, the Seventh Circuit decided *Mattingly v. Heckler*, 784 F.2d 258 (7th Cir. 1986). *Mattingly* presented a case that is precisely the inverse of the present case. In *Mattingly*, the institutionalized spouse had greater income and resources than did the non-institutionalized spouse. The case

nursing home, the policy explained in this letter replaces the policy implemented earlier this year as a result of the court decision in *Brown v. Stanton.*
*See Plaintiffs' Supplemental Brief*, Exhibit B.

**4.** The Court notes that the state involved in the *Herweg* case, Iowa, is an "SSI state," whereas Indiana is a "§ 209(b) State." The Court believes that this distinction does not change its analysis, particularly in light of the fact that "States exercising the § 209(b) option are *required* to deem income to the extent required in SSI States and may deem to the full extent they did before 1972." *Herweg*, 455 U.S. at 277–78, 102 S.Ct. at 1068.

involved an Indiana statute that established a flat maintenance allowance to provide for the needs of non-institutionalized spouses of institutionalized Medicaid recipients. The issue was whether the non-institutionalized spouse was entitled to an opportunity to demonstrate a greater need for support *from the institutionalized spouse's income* than was allowed for under the statute. The Seventh Circuit held that the non-institutionalized spouse was *not* entitled to an individual factual determination of need before the state established his monthly maintenance allowance.

The factual difference between *Mattingly* and the present case was expressly noted by the Seventh Circuit:

> An examination of *Brown II* reveals that it involved a factual situation distinguishable from the present case: *Brown II* addressed a State of Indiana regulation imposing an obligation on the non-institutionalized spouse of a Medicaid recipient to contribute a share of the spouse's income to defray the medical costs of the Medicaid recipient, while in this case, the Medicaid recipient already is under an obligation to pay for medical care, and the State of Indiana has sheltered a portion of the Medicaid recipient's income to provide a maintenance allowance for a non-institutionalized spouse. Accordingly, *Brown II* does not provide the rule of decision for this case....

*Mattingly,* 784 F.2d at 268. Thus, *Mattingly* does not disturb this Court's 1979 Judgment, reaffirmed in *Brown I* and *Brown II,* regarding the first level inquiry.

However, *Mattingly* is important for the policy reasons articulated by the Seventh Circuit in support of its decision. After determining that *Brown II* did not control, the *Mattingly* court stated:

> we must determine whether [the Social Security Act] mandates individual factual determinations in establishing the amount of a Medicaid recipient's income to be sheltered for a non-institutionalized spouse. We look for guidance to the general principles set forth by the Supreme Court in *Gray Panthers:*

> The administration of public assistance based on the use of a formula is not inherently arbitrary. There are limited resources to spend on welfare. To require individual determinations of need would mandate costly factfinding procedures that would dissipate resources that could have been spent on the needy.

453 U.S. at 48, 101 S.Ct. at 2642 (citations omitted). In light of these guiding principles, we conclude that individual factfinding procedures would dissipate the limited resources of the Medicaid program in the increased administrative expense of providing such procedures, thus reducing the amount of funds available to Medicaid recipients, and we hold that individual determinations of need are unnecessary in establishing the monthly maintenance allowance for the non-institutionalized spouse of a Medicaid recipient.

784 F.2d at 268. Similarly, to require individual factual determinations of the non-institutionalized spouse's needs and available resources in the present case "would mandate costly factfinding procedures that would dissipate resources that could [be] spent on the needy." *Id.* (quoting *Gray Panthers,* 453 U.S. at 48, 101 S.Ct. at 2642).

### D. *The Medicare Catastrophic Coverage Act of 1988*

The final significant event that has occurred since this Court's 1979 Judgment was the enactment of the Medicare Catastrophic Coverage Act of 1988 ("the Act"), P.L. 100–360. The Act made major changes in the treatment of the non-institutionalized spouse's resources for "deeming" purposes. "In determining the resources of an institutionalized spouse at the time of application for benefits" under Medicaid, "all the resources held by either the institutionalized spouse, [non-institutionalized] spouse, or both, shall be considered to be available to the institutionalized spouse," subject to the following exemptions. 42 U.S.C. § 1396r–5(c)(2)(A).

The noninstitutionalized spouse can keep $12,000 or one-half of the resources, whichever is greater, but not more than $60,000. 42 U.S.C. § 1396r–5(f)(2). After eligibility for Medicaid is established, "no resources of the [non-institutionalized] spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1394r–5(c)(4).

The Act also changes the treatment of income. Generally, "during any month in which an institutionalized spouse is in the institution … no income of the [non-institutionalized] spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r–5(b)(1). However, both the income and resource provisions of the Act only apply to individuals who were institutionalized on or after September 30, 1989.

## IV. *Conclusion*

Based upon the foregoing, the Court now concludes that the state defendant has failed to comply with the mandate of this Court's March 15, 1979 injunction as it pertains to the deeming of resources. However, the Court further concludes that the Supreme Court's decision in *Herweg v. Ray*, 455 U.S. 265, 102 S.Ct. 1059 (1982) constituted a change in controlling law that supports modification of the Court's injunction as it pertains to the deeming of resources.

The Court now finds that the state defendant failed to act in accordance with this Court's injunction regarding resources from the date of entry of the injunction, March 15, 1979, until the date of decision in *Herweg v. Ray* by the United States Supreme Court.

Effective with the date of the Supreme Court's decision in *Herweg v. Ray*, February 23, 1982, the Court hereby modifies the injunction in this cause so as to preclude its application to the deeming of resources. Thereafter, the state defendant was and is under no obligation, by virtue of the injunction in this case, to make individualized factual determinations of the amount of resources of the non-institutionalized spouse that should be taken into account in determining the Medicaid eligibility of the institutionalized spouse.

The Court hereby ORDERS that notice be given to those plaintiff class members who were entitled to benefit from this court's injunction as it pertains to resources between March 15, 1979 and February 23, 1982, as follows.

1) Within a period of 60 days from the date of this entry, the welfare department shall send individual notices by first class mail and place print advertisements in newspapers, as more specifically described below, notifying members of the affected class of their right to make claims based upon the failure of the welfare department to comply with the resources portion of this court's 1979 judgment for the period of time set out above.

2) Individual notices by first class mail shall be sent to all current Medicaid recipients who are now in institutions and whose Medicaid eligibility began during the period of time between 1979 and 1982, inclusive. The parties believe that approximately 7,000 notices will be sent out. The contents of the notice shall be substantially similar to Attachment A, although the format may be changed by agreement of the parties to enhance readability.

3) Print advertisements shall be placed in each Indiana newspaper that publishes daily (excluding Sunday) and the Indiana edition of the Louisville Courier–Journal. In addition, print advertisements shall be placed in each Indiana newspaper that publishes weekly with a circulation of more than 5,000 and that is published in a county that does not have a newspaper of daily circulation. The parties believe that print advertisements will be placed in approximately 75 daily newspapers and 13 weekly newspapers. The contents of the print advertisements shall be substantially similar to Attachment B, although the format may be changed by agreement of the parties to enhance readability and to conform to the requirements of newspaper publication. Newspaper advertisements shall be placed to run a total of 2 times with one week separating each publication. Each advertisement shall not be less than one-eighth ($\frac{1}{8}$) of a standard newspaper page in size.

4) The mailed notices shall include a claim form that can be returned to the Indiana Department of Public Welfare. In addition, each county welfare department shall be provided with a supply of claim forms to distribute to persons requesting the same. The defendants shall develop written instructions to county caseworkers, setting out guidelines for responding to inquiries from potential claimants or persons acting on their behalf. Defendants shall give counsel for plaintiffs an opportunity to review and comment upon the written instructions before distributing them to the county welfare departments.

5) Claim forms shall be required to be returned to the Indiana Department of Public Welfare by a date certain. The return date shall be agreed upon by the parties when the precise schedule for sending out the mailed notices and placing the print advertisements can be determined. The return date shall be on or about ten (10) full weeks following the date the individual notices are mailed out or the last print advertisement is published, whichever date is later.

6) Sixty (60) days following the return date for claim forms, the parties shall report to the court the number of persons making claims and shall either submit to the court an agreed proposed plan for processing claims or, failing agreement, submit separate proposed plans for processing claims.

7) The question of the amount of attorneys' fees to which plaintiffs are entitled shall be deferred until the claims processing procedure has been completed.

ATTACHMENT A

## IMPORTANT MEDICAID NOTICE!

**IF YOU ANSWER "YES" TO THE QUESTIONS BELOW, ASSETS YOU SHOULD HAVE BEEN PERMITTED TO KEEP, BUT WERE TOLD TO SPEND OR TURN OVER TO THE WELFARE DEPARTMENT TO BE ELIGIBLE FOR MEDICAID, MAY NOW BE RETURNED TO YOU.**

Were you married and did you or your spouse apply for Medicaid during 1979, 1980, 1981, or 1982?

**-AND-**

Were you or your spouse living in a nursing home at or near the time you applied for Medicaid?

**-AND-**

Were you or your spouse unable to get Medicaid because you owned more than $2,250 in assets?

**-OR-**

Did you or your spouse spend or turn over to the welfare department assets that were worth more than $2,250 in order to become eligible for Medicaid?

In a lawsuit called <u>Brown versus Magnant</u>, the U.S. District Court has decided that between **February of 1979 and February of 1982**, if a spouse who was in a nursing home applied for Medicaid, the spouse who stayed at home should have been given a chance to show that he or she needed more than $2,250 in assets in order to meet the living expenses of remaining at home. As a result of that decision, you will now be given a chance to show that you should have been allowed to keep more assets. **The additional assets that you should have been permitted to keep may now be return**ed to you.

If you think you were among the people who were not given a chance between **February of 1979 and February of 1982** to show that you needed to keep more assets to meet your living expenses, you should promptly mail the enclosed claim form to the Indiana Department of Public Welfare.

<u>To make a claim, the enclosed claim form must be received by the Indiana Department of Public Welfare by [insert date here].</u> **IF YOUR CLAIM FORM IS NOT RECEIVED BY [insert date here], YOU WILL LOSE ANY RIGHTS YOU MIGHT HAVE UNDER THE COURT DECISION.**

After your claim form is received, you will be contacted and given more details about what steps you will need to take.

If you have questions, you should contact the Medicaid Division of your county welfare department.

1174

## BROWN VS. MAGNANT CLAIM

**FOLD AND RETURN TO THE INDIANA DEPARTMENT OF PUBLIC WELFARE!**
**(Address on reverse side)**

I believe that I may have rights to compensation under the court decision in __Brown vs. Magnant__. This claim is my formal notice to the Indiana Department of Public Welfare that I am asking to exercise my rights under that court decision. By submitting this claim, I am stating that the following facts are true to the best of my present knowledge and belief:

1) I was married, and my spouse or I applied for Medicaid in the years 1979, 1980, 1981 or 1982;

2) My spouse or I was living in a nursing home at or near the time the Medicaid application was filed;

3) My spouse and I had assets greater than $2,250 just before or at the time of filing the Medicaid application; and

4) My spouse and I had to dispose of assets in excess of $2,250 in order to become eligible for Medicaid.

I understand that after filing this claim I will be given further detailed information about what steps I must take to establish any rights to compensation under the __Brown vs. Magnant__ court decision. I understand that if the Indiana Department of Public Welfare does not receive this claim by [insert date here], I will lose any and all rights I might have under the __Brown vs. Magnant__ court decision.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

My name is:_____

The name of my spouse is/was:_____

My current address is:_____

_____

My telephone number is: _____

Who applied for Medicaid in 1979-1982? _____ self _____ spouse

County where Medicaid application was filed: _____

Date: _____

_____
Your signature

**THIS FORM MUST BE RECEIVED BY**
**THE INDIANA DEPARTMENT OF PUBLIC**
**WELFARE BY [INSERT DATE]**

ATTACHMENT B

## IMPORTANT MEDICAID NOTICE!

### IF YOU OR YOUR SPOUSE APPLIED FOR MEDICAID IN 1979 THROUGH 1982, YOU MAY BE OWED MONEY

**YOU SHOULD READ THIS NOTICE IF YOU ANSWER "YES" TO THESE QUESTIONS:**

Were you married and did you or your spouse apply for Medicaid during 1979, 1980, 1981, or 1982?

**-AND-**

Were you or your spouse living in a nursing home at or near the time you applied for Medicaid?

**-AND-**

Were you or your spouse unable to get Medicaid because you owned more than $2,250 in assets?

**-OR-**

Did you or your spouse spend or turn over to the welfare department assets that were worth more than $2,250 in order to become eligible for Medicaid?

If so, you may have important rights under a lawsuit decided by the United State Distict Court in Indianapolis. In the case of <u>Brown versus Magnant</u>, the court decided that spouses of nursing home residents who applied for Medicaid between **February of 1979 and February of 1982** should have been allowed to show that they needed to keep more than $2,250 in assets and still have their spouses found eligible for Medicaid. **The additional assets that you should have been permitted to keep may now be returned to you.**

If you think you were among the people who were not given a chance between those dates to show that you needed to keep more assets to meet your living expenses, you should contact the Medicaid Division of your county welfare department and explain that you wish to make a claim under the <u>Brown versus Magnant</u> case. You will be given a form that you should promptly mail in to the Indiana Department of Public Welfare. <u>To make a claim, your claim form must be received by the Indiana Department of Public Welfare by [insert date here].</u> If your claim form is not received by [insert date here], you will lose any rights you might have under the court decision. IT IS IMPORTANT THAT YOU ACT PROMPTLY!

After your claim form is received, you will be contacted and given more details about what steps you will need to take.

If you have questions, you should contact the Medicaid Division of your county welfare department.