832 F.Supp. 1271 (1993)
Paul CHERRY, by his next friend David CHERRY, and Lorene Newkirk, by her next friend Carl Newkirk, Vivian Spaulding, by her next friend Paul Spaulding, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
Suzanne MAGNANT, in her official capacity as Administrator of the Indiana Department of Public Welfare, Defendant.
No. IP 90-C-1348.
United States District Court, S.D. Indiana, Indianapolis Division.
September 22, 1993.
*1272 Dennis K. Frick, Legal Services Organization of Indiana, Inc., Indianapolis, IN, for plaintiffs.
Gordon E. White, Jr., Office of the Indiana Atty. Gen., Harold R. Bickham, Office of the U.S. Atty., Indianapolis, IN, for defendant.

ENTRY
BARKER, District Judge.

I. BACKGROUND
The plaintiffs in this class action suit represent Indiana residents who have lived in a *1273 nursing home since before September 30, 1989, and have been found ineligible for assistance from the Medicaid program because of resources owned by spouses who live at home.[1] For example, the most recent class representative, Vivian Spaulding, age 79, was a married Medicaid applicant who resided at the Lawrence Manor Nursing Home in Indianapolis, Indiana.[2] She has continuously resided in a nursing home for the past eight years; her husband resided elsewhere. Mr. Spaulding's holding of approximately $6,000 in a personal savings account, absent an injunction from this court,[3] would disqualify Mrs. Spaulding for Medicaid assistance unless he reduced his assets below $2250.

The Medicaid Program
The Medicaid program[4] was established in 1965, as Title XIX of the Social Security Act, as a way for the states and the federal government to provide cooperatively medical assistance to the "needy." Title XIX of the Social Security Act, 79 Stat. 343, as amended, 42 U.S.C. § 1396 et seq; See Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2679, 65 L.Ed.2d 784 (1980) (the Medicaid program "provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons"). The Medicaid program originally required participating states to provide medical assistance to individuals who received cash payments under four joint federal/state welfare programs administered by the states: Old Age Assistance, 42 U.S.C. § 301 et seq. (1970 ed.); Aid to Families with Dependent Children, § 601 et seq.; Aid to the Blind, § 1201 et seq.; and Aid to the Permanently and Totally Disabled, § 1351 et seq. In 1972 Congress replaced three of the four programs with a new federal program, the Supplemental Social Security Income ("SSI").[5]
In many states, the establishment of the SSI program increased the number of individuals previously ineligible for assistance under the state programs. Fearing that these states would organize a mass exodus from the Medicaid program rather than expand their Medicaid coverage, Congress enacted 42 U.S.C. § 1396a(f), which has become commonly known as the § 209(b) option. Schweiker v. Gray Panthers, 453 U.S. 34, 38, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981); see Pub.L. No. 92-603 § 209(b), 42 U.S.C. § 1396a(f). Under § 209(b), a state can elect to provide Medicaid assistance only to "those individuals who met the eligibility requirements for the state administered programs on January 1, 1972, rather than determining Medicaid eligibility according to the standards of the new SSI program."[6]Mattingly *1274 v. Heckler, 784 F.2d 258, 262 n. 3 (7th Cir. 1986) (citing Norman v. St. Clair, 610 F.2d 1228, 1231 (5th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981)), see Schweiker v. Gray Panthers, 453 U.S. at 38-39, 101 S.Ct. at 2637-38; Roloff v. Sullivan, 975 F.2d 333, 336 (7th Cir.1992).
Indiana has chosen to participate in the Medicaid program under the § 209(b) option but has chosen not to serve the "medically needy."[7] Indiana, therefore, obligated itself only to serve the "categorically needy"  families with dependent children eligible for public assistance under the Aid to Families with Dependent Children program, the aged, the blind, and the disabled eligible for benefits under the Supplemental Security Income program. See 42 U.S.C. § 1396a(a)(10)(A); Harris, 448 U.S. at 301, n. 1, 100 S.Ct. at 2679, n. 1.
When originally enacted, there was no issue as to whether § 209(b) authorized a state to use criteria more restrictive than that used in the SSI program (as long as the state's plan was no more restrictive than the plan it had in effect on January 1, 1972). See Roloff v. Sullivan, 975 F.2d at 340 ("The Supreme Court has consistently characterized Section 209(b) as a means whereby states can restrict Medicaid coverage.") (citing Gray Panthers, 453 U.S. at 38, 101 S.Ct. at 2637). However, when Congress passed § 303(e)(5) of the 1988 Medicare Catastrophic Coverage Act, Pub.L. No. 100-360, codified at 42 U.S.C. § 1396a(r)(2), which provides that a state's methodology for determining Medicaid eligibility "may be less restrictive, and shall be no more restrictive, than the methodology [used in the SSI program]," it appeared to some that § 303(e) effectively repealed § 209(b) and that under § 303(e)(5), a state no longer had the authority to apply more restrictive criteria, only less restrictive criteria. See Mowbray v. Kozlowski, 724 F.Supp. 404, 412 (W.D.Va.1989) ("Mowbray I"), reversed 914 F.2d 593, 599 (4th Cir.1990).

The Motions for Summary Judgment
The plaintiff class has filed a motion for summary judgment, claiming that Indiana's methodology for determining Medicaid eligibility for a married person who entered an institution for medical treatment before September 30, 1989, is more restrictive than the methodology used under the SSI program and therefore violates 42 U.S.C. § 1396a(r)(2) (known alternatively as § 303(e)(5)). See 470 IAC 9.1-13-17(a)(2), as amended at 13 Ind. Reg. 878 (Feb. 1, 1990); see also Indiana Medicaid Manual, § 2210(a)(2).[8] The plaintiff *1275 class claims this community resource rule, by which all resources, owned by either the community or institutional spouse, are included in determining whether a married, institutionalized applicant's resources are less than or equal to $2,250, is more restrictive than 20 C.F.R. 416.1802(a)(2),[9] an SSI rule, and therefore invalid.
In response, the defendant moves for summary judgment, claiming that a § 209(b) Medicaid state may apply eligibility criteria more restrictive than the SSI criteria, as long as the § 209(b) state's criteria are not more restrictive than the criteria it employed on or before January 1, 1972. The defendant asserts that based on the legislative history, statutory language, and the apparent purposes of 42 U.S.C. §§ 1396a(r)(2) and 1396a(f), Congress did not intend for § 303(e) to repeal § 209(b).
In reply to the defendant's response, the plaintiff class reasserts its previous arguments, contending that an opinion from the Fourth Circuit, Mowbray v. Kozlowski, 914 F.2d 593 (4th Cir.1990) ("Mowbray II"), squarely addressed this issue but decided incorrectly that § 303(e)(5) did not repeal § 209(b). Plaintiffs also maintain that even if Indiana's community resource rule is not invalid under § 303(e)(5), Indiana's "deeming rule" violates the Equal Protection Clause of the United States Constitution and § 504 of the Rehabilitation Act of 1973. The plaintiffs also move for oral argument on their summary judgment motion.
The Secretary of Health and Human Services ("Secretary") has filed an amicus curie response to the plaintiff class's motion[10], offering her interpretation of the interplay between the two statutes. The Secretary asserts that Congress did not intend for § 303(e)(5) to supersede or repeal § 209(b), but rather, § 303(e)(5) "merely accord[ed] § 209(b) states the additional flexibility to adopt eligibility criteria more liberal than SSI's, if they so chose."
The motions for summary judgment are fully briefed, and the parties agree that there are no material issues of fact in dispute to preclude summary judgment.

II. DISCUSSION

Summary Judgment Standard
Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. See Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir.1989).

Sections 209(b) and 303(e)(5)
The Seventh Circuit recently recognized the conflicting interplay between these two statutes and, albeit in a footnote and arguably as dicta, has suggested that § 303(e) does not repeal § 209(b):

*1276 There is an obvious tension between [§ 303(e)(5)] and Section 209(b). Mowbray v. Kozlowski, 914 F.2d 593, 599 (4th Cir.1990). We need not address that tension, because plaintiffs explicitly decline to argue that the MCCA effectively repealed Section 209(b). Plaintiffs concede, despite language apparently to the contrary in Section 1396a(r)(2), that a state under Section 209(b) may apply more restrictive methodologies if those methodologies were employed in 1972. Given this concession, the only relevant change made by the MCCA is that Section 209(b) states can apply less restrictive criteria if they wish. This change in the law does not affect the relationship between Section 209(b) and the SSI option, at least for states such as Indiana which do not wish to be less restrictive.
Roloff v. Sullivan, 975 F.2d 333, 340 n. 11 (7th Cir.1992).
The Fourth Circuit, on the other hand, has addressed this issue directly and has held that § 303(e)(5) does not repeal § 209(b) and that Virginia's relatively more restrictive eligibility criteria do not violate § 303(e). In Mowbray v. Kozlowski, 914 F.2d 593 (4th Cir.1990) ("Mowbray II"), the Fourth Circuit set out a two-step process by which to analyze these cases:
We first explore the language of the Medicaid statute to determine whether § 303(e) does in fact repeal § 209(b). If it does, our inquiry ends, and the Secretary's contrary interpretation warrants no deference. However, if § 303(e) does not plainly repeal § 209(b), we then must consider seriously the Secretary's interpretation of the two provisions to see if it is "based on a permissible construction of the statute." Chevron, 467 U.S. [837] at 843 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)]. If it is, we must defer to the Secretary's judgment.
Id., at 599. The court concluded that although there is "tension" between § 209(b) and § 303(e), § 209(b) by its own language emphatically states that it applies "notwithstanding any other provision" of the Medicaid statute. The court found important that § 209(b) was amended as recently as 1989, two years after the enactment of § 303(e), which suggests that § 209(b) continues to have general application "notwithstanding" other provisions of the Medicaid statute, including § 303(e) (which was not included among the 1989 list of exceptions to § 209(b)). The court also noted that § 303(e) was enacted to apply retroactively, which provided powerful evidence that § 303(e) was not intended to effect a repeal of § 209(b). Id. at 599-600.
The court further held that "[a]t the very least, ... the statutory scheme is profoundly ambiguous and that Congress has not spoken with the clarity that Pennhurst v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) requires before the federal government can change the terms of its Medicaid `contract' with the states." Mowbray II at 600; see also id. at 602 (Ervin, C.J., concurring in part) ("The conflict in the language of section 209(b) and section 303(e) creates an ambiguity that cannot be resolved by examining the plain language of the statutes or their legislative histories.") Critically, upon finding no repeal of § 209(b), the court found reasonable and entitled to deference the Secretary's interpretations that § 303(e) merely codified the moratorium Congress passed in 1984[11] and that "far from *1277 curtailing the flexibility afforded to states by § 209(b), § 303 was actually designed to help states retain a different type of flexibility, namely, the flexibility to be more liberal if they desired." Id. at 601; Coleman v. Glynn, 983 F.2d 737, 740-41 (6th Cir.1993) (agreeing with Mowbray II's interpretation and resolution of the § 209(b) and § 303(e)(5) issue).
As the court found in Mowbray II, so this court also must conclude that Congress has not spoken with the clarity required to effect a repeal, even a partial one, and that the legislative history and evolution of these two statutes do not indicate that Congress intended to effect a partial repeal of § 209(b). The plaintiffs' reading of the statutes at issue here would substantially increase the obligations of the state without any clear statement from Congress providing the states with adequate, unambiguous notice, thus creating a voluntary and knowing waiver. We agree with the Mowbray II court's observation that "states must not be left to guess at federal intentions in their own budgetary planning process." 914 F.2d at 598. A higher level of clarity is required in statutes that relate to conditions for receipt of federal spending. Coleman, 983 F.2d at 740-41; see Pennhurst, 451 U.S. at 24-25, 101 S.Ct. at 1543-44.
Because this court finds that the two statutes are ambiguous and that the Secretary's interpretation is reasonable, we defer to and agree with her interpretation of § 303(e)(5) on § 209(b). See Coleman, 983 F.2d at 740-41 ("Ambiguities are to be read in favor of the states, and if the statute can reasonably be interpreted in a way which is less expensive for the state, that construction is permissible.") Accordingly, we hold that § 209(b) does not repeal § 303(e), partially or otherwise, and conclude that Indiana's community resource rule is not invalid under § 303(e)(5).[12]
The plaintiffs' motion for summary judgment is denied, and the court turns to the defendant's motion for summary judgment on the grounds of equal protection and discrimination. See Wausau Ins. Co. v. Valspar Corp., 594 F.Supp. 269, 270 (N.D.Ill.1984).

EQUAL PROTECTION
The plaintiff class claims that Indiana has created two distinct classes: (1) spouses that enter a nursing home on or after September 30, 1989, and receive the favorable benefits of the Medicaid program, and (2) spouses that enter a nursing home before September 30, 1989, and cannot receive Medicaid until the resources of both spouses are below $2,250. The plaintiff class claims that this distinction is irrational and affects the fundamental right of marriage and is therefore unconstitutional.
The plaintiff class relies on Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) in claiming that Indiana's community resource rule is subject to strict scrutiny. Arguing that although the Indiana rule does not prohibit couples from remaining married, plaintiffs maintain that the rule creates such a gross disparity that it substantially impinges upon decisions to stay married. The plaintiff class asserts that there is neither a compelling reason to justify this disparate impact upon the fundamental right of marriage nor, in the alternative, is there rational reason to make such a rule. Accordingly, the plaintiff class contends that the Indiana rule fails under either both the strict scrutiny and the rational relationship test.
The issue of whether "deeming" certain income and resources belonging to a spouse *1278 of an institutionalized Medicaid applicant to belong to the applicant violates the Equal Protection Clause has almost always escaped judicial analysis. For example, in Schweiker v. Gray Panthers, 453 U.S. 34, 46, 101 S.Ct. 2633, 2641, 69 L.Ed.2d 460 (1981) ("Gray Panthers I"), the Court, concurring with the opinion expressed in Norman v. St. Clair, 610 F.2d 1228, 1237 (5th Cir.1980), cert. denied Schweiker v. Norman, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981), held that "`Congress intended that income deemed from a spouse' could `be a part of the `available' income which the state may consider in determining eligibility'." Gray Panthers I, 453 U.S. at 45, 101 S.Ct. at 2641.
Nothing in the 1972 Amendment suggests that Congress intended to terminate the practice of "deeming" already contained in many state plans; rather, Congress appears to have ratified this practice.... States using the § 209(b) option thus were told they could retain virtually all of the Medicaid eligibility limitations  including "deeming"  that were allowed under the original Act.
Id. at 46-47, 101 S.Ct. at 2641-42. The Court noted that by treating spouses differently under the Medicaid program by explicitly authorizing state plans to "take into account the financial responsibility" of the spouse, citing 42 U.S.C. § 1396a(a)(17)(D), "Congress thus demonstrated that `deeming' is not antithetical to the general statutory requirement that Medicaid eligibility be based solely on resources `available' to the applicant." Id. at 47, 101 S.Ct. at 2642. However, after concluding that "deeming" in the abstract is acceptable, the Court refused to address the constitutional implications of "deeming" as applied to spousal income:
By holding for respondent on statutory grounds, the lower court pretermitted respondent's constitutional arguments.... These arguments are, of course, open to be litigated on remand. We express no view as to their merit.
Id. at 50, n. 23, 101 S.Ct. at 2643, n. 23.
Similarly, in Herweg v. Ray, 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982), the issue of "deeming" was again before the Court, and even though the petitioner contended that Iowa's Medicaid deeming rule violated the Equal Protection Clause and the Due Process Clause, those issues "were not considered either by the District Court or by the Court of Appeals and are not before this Court." Id. at 271, n. 6, 102 S.Ct. at 1064, n. 6. The issue of the constitutionality of spousal deeming was similarly raised in Brown v. Stanton, 617 F.2d 1224 (7th Cir. 1980), which was vacated and remanded by the Supreme Court in light of Gray Panthers. On remand, in Brown v. Smith, 662 F.2d 464 (7th Cir.1981), the Seventh Circuit stated:
We, therefore, emphasize that this case has been decided as a matter of statutory, not constitutional construction. Consistent with footnote 23 in Gray Panthers, we too leave appellants' constitutional arguments open to litigation on remand while intimating no opinion as to their merit.
Brown, 662 F.2d at 468, n. 3. On a further remand (to the Southern District of Indiana), when this issue was finally ripe for adjudication, the district court reported that "[t]he plaintiffs have abandoned their constitutional theories." Brown v. Magnant, 773 F.Supp. 1164, 1165-66, n. 1 (S.D.Ind.1990). No other court in this circuit has since addressed this issue, and thus, the issue of whether spousal deeming violates Equal Protection is one of first impression in the Seventh Circuit. See Mattingly by Mattingly v. Heckler, 784 F.2d 258, 261 n. 2 (7th Cir.1986).
Only one court has directly addressed the constitutionality of this issue. On remand, in Gray Panthers v. Admin., Health Care Fin. Admin., 566 F.Supp. 889 (D.D.C.1983) ("Gray Panthers II"), the district court found that the Medicaid deeming regulations do not impermissibly burden the right to marry under the Fifth Amendment guarantee of due process. As the plaintiff class claims here, so the plaintiffs in Gray Panthers II alleged that the defendant's regulations "unquestionably discriminate against married couples," since non-institutionalized spouses "are forced to live at poverty level in order to ensure that their spouses are not deprived of necessary health care," a situation which will lead inexorably to the end of marriages. The court in Gray Panthers II disagreed with *1279 that contention as did the court in Norman v. St. Clair[13], which held that the regulations "only incidentally burden[] the marriage relationship." Gray Panthers II, at 893 (citing Norman v. St. Clair, 610 F.2d at 1243.)
We are persuaded by the rationale in Gray Panthers II and determine that Indiana's deeming rule creates only an indirect interference with the marital right. Marriage generally entails a sharing of responsibilities, and the deeming regulations, quite frankly, simply recognize that fact. Gray Panthers II, 566 F.Supp. at 893. The deeming regulation does not impermissibly burden the right of marriage, and the rule is therefore subject to a rational relationship test, not strict scrutiny. See Bowen, 483 U.S. at 600, 107 S.Ct. at 3017; Califano v. Jobst, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); see also Brown v. Heckler, 589 F.Supp. 985 (E.D.Pa. 1984); compare Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (strict scrutiny applies when a regulation severely and directly affects the right of marriage).
Indiana, as do other states, has a legitimate interest in controlling Medicaid expenditures and seeing that Medicaid dollars are allotted to only the truly needy recipients. See Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). That this is a time of widespread shortages in the public fisc is well known enough not to warrant any elaboration; all levels of government must contend with this general austerity. Indiana has the additional legitimate interest in recognizing the marital relationship for what it is, a relationship of interdependence wherein it is neither unfair nor unrealistic to require one spouse to support the other, in particular to help meet the obligation to pay for family medical bills. See Planned Parenthood of Central Mo. v. Danforth, 428 U.S. 52, 69, 96 S.Ct. 2831, 2841, 49 L.Ed.2d 788 (1976). Indiana's "deeming" rules are rationally related to these legitimate interests. The court, therefore, concludes that Indiana's spousal "deeming" rules are not invalid under the Equal Protection Clause.

Discrimination Against the Handicapped and Very Ill
The plaintiffs also claim that Indiana's "deeming" rules discriminate against the "most handicapped and the most seriously ill," because only the extremely handicapped and/or most severely ill are prevented from being able to interrupt a "continuous period of institutionalization." Because Indiana allows a married person who entered a nursing home before September 30, 1989, to obtain the benefits of the MCCA spouse impoverishment rules, see § 1396r-5, if he or she can move out of the institution for at least thirty days, the plaintiffs claim that Indiana's deeming regulations violate the Equal Protection Clause, as well as § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794[14] by foreclosing the option to move out to the most afflicted.
The plaintiff class has not been certified to represent a class of Medicaid applicants who are "seriously ill" or "most handicapped." In fact, the plaintiff class has presented no evidence that every (or any) member of the class falls into either of those categories, nor has the plaintiff class demonstrated or *1280 claimed that the "seriously ill" or the "most handicapped" is a readily identifiable class, perhaps as compared to people who are merely ill or handicapped, or those who chose not to move out of the nursing home although capable, or those who are seriously ill part of the time and only ill the rest of the time, or those who could move out but have nowhere else to go. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 19, 93 S.Ct. 1278, 1289, 36 L.Ed.2d 16 (1973). Thus, the court finds that the plaintiff class has no standing to raise this claim.[15]

III. CONCLUSION
In accord with the above discussion, the Order imposing a preliminary injunction is VACATED, and the defendant's motion for summary judgment is GRANTED. The plaintiff class's motion for summary judgment is DENIED. Plaintiffs' motion for oral argument on their summary judgment motion is denied.
It is so ORDERED.

JUDGMENT
Pursuant to the Court's entry of this date, judgment is hereby entered in favor of Defendant Suzanne Magnant and against the plaintiff class  Paul Cherry, Lorene Newkirk, Vivian Spaulding and all others similarly situated. The parties shall bear their own costs.
It is so ORDERED.
NOTES
[1] On June 6, 1990, this court ordered this cause to be certified as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2).
[2] Since the filing of the summary judgment motions, Mrs. Spaulding has died; thus, a new class representative has yet to be named. For the purposes of resolving these motions, this Court need not wait for the naming of a new class representative since the class survives the death of its named representative.
[3] On June 6, 1990, this court issued a preliminary injunction in favor of the plaintiff class, enjoining the defendants from "applying a methodology for computing resources which is more restrictive than the methodologies provided under the Supplemental Income Act, or from excluding the plaintiff class from participating in the Medicaid program in any way inconsistent with the requirements of the Medicaid Catastrophic Coverage Act of 1988."
[4] The federal and state Medicaid statutes have been described as the regulatory equivalent of the "Serbonian bog." See John Milton, Paradise Lost, bk. 2, 1.592 ("A gulf profound, as that Serbonian bog Betwixt Damiata and Mount Casius old, Where armies whole have been sunk."). These regulations have also been characterized as "almost unintelligible to the uninitiated," Friedman v. Berger, 547 F.2d 724, 727 n. 7 (2nd Cir.1976) (Friendly, J.), cert denied, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); as an "aggravated assault on the English language, resistance to attempts to understand it"; Friedman v. Berger, 409 F.Supp. 1225, 1225-26 (S.D.N.Y. 1976); and by this circuit as "labyrinthinan." Roloff v. Sullivan, 975 F.2d 333, 340, n. 12 (7th Cir.1992).
[5] The full title of the statute is Supplementary Security Income for the Aged, Blind and Disabled, 42 U.S.C. § 1381 et seq., Pub.L. No. 92-603, 86 Stat. 1465.
[6] Section 209(b), as codified at 42 U.S.C. § 1396a(f), provides:

EFFECTIVE DATE OF STATE PLAN AS DETERMINATIVE OF DUTY OF STATE TO PROVIDE MEDICAL ASSISTANCE TO AGED, BLIND, OR DISABLED INDIVIDUALS. Notwithstanding any other provision of this subchapter, except as provided in subsection (e) of this section and section 1382h(b)(3) of this title, no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the state or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972.
[7] A state's participation in the Medicaid program is entirely optional, but once a state elects to participate in that plan, it must comply with the requirements of Title XIX. 42 U.S.C. § 1396 et seq.; see Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2679, 65 L.Ed.2d 784 (1980). A state that has elected to participate in the Medicaid program is not obligated, although it is permitted, to serve the "medically needy": those persons in need of medical assistance whose income levels disqualify them for the AFDC of SSI programs.
[8] 470 IAC 9.1-3-17 provides in part:

(a) An applicant or recipient is ineligible for medical assistance for any month in which the total equity value of all nonexempt personal property exceeds the applicable limitation, set forth below, on the first day of the months:
. . . . .
(2) two thousand two hundred fifty dollars ($2,250) for the applicant or recipient and his spouse if the couple is living together, or if the most recent continuous period of institutionalization of one (1) member of the couple began prior to September 30, 1989; ...
[9] The plaintiffs claim that under 20 C.F.R. 416.1802(a)(2), a spouse's resources are deemed the resources of the other only when the married couple is living together.
[10] The court denied the defendant's motion to join the Secretary as a party defendant but allowed the "HHS to appear as amicus on the issues raised in this litigation, in particular, in the motion for summary judgment." See Margin Ruling on Motion to Join Louis W. Sullivan Secretary of the Department of Health and Human Services, as a Defendant, dated 11/14/91.
[11] Congress passed a moratorium in 1984 prohibiting the imposition of monetary penalties on states for the use of less restrictive eligibility criteria, as long as the criteria did not "make ineligible any individual who would be eligible" under the prior scheme. Deficit Reduction Act, Pub.L. No. 98-369, § 2373(c)(1), 98 Stat. 494, 1112 (1984), as amended by Pub.L. No. 100-93, § 9, 101 Stat. 680, 695 (1987). This moratorium applied retroactively to October 1, 1981. See S.Rep. No. 109, 100th Cong., 1st Sess. 25, reprinted in 1987 U.S.Code Cong. & Admin.News 682, 706.

The moratorium provided, in part:
The Secretary ... shall not take any compliance, disallowance, penalty, or other regulatory action against a State with respect to the moratorium period ... by reason of such State's plan ... (including any part of the plan operating pursuant to [the § 209(b) option] ...), or the operation thereunder, being determined to be in violation of clause (IV), (V), or (VI) of [42 U.S.C. § 1396a(a)(10)(A)(ii)] or [42 U.S.C. § 1396a(a)(10)(C)(i)(III)] on account of such plan (or its operation) having a standard or methodology which the Secretary interprets as being less restrictive than the standard or methodology required under such section, provided that such plan (or its operation) does not make ineligible any individual who would be eligible but for the provisions of this subsection.
Pub.L. No. 98-369, § 2373(c)(1), 98 Stat. 494, 1112 (1984), as amended by Pub.L. No. 100-93, § 9, 101 Stat. 680, 695 (1987).
[12] Although this Court stated in granting the plaintiffs' motion for a preliminary injunction that the plaintiff class had demonstrated a high likelihood of success on the merits, the Roloff case had not yet been decided by the Seventh Circuit, and the primary case on which this court had relied in making its previous determination has since been reversed. See Mowbray v. Kozlowski, 914 F.2d 593, 599 (4th Cir.1990) (cited approvingly in Roloff) (reversing Mowbray v. Kozlowski, 724 F.Supp. 404, 412 (W.D.Va.1989)).
[13] In Norman v. St. Clair, 610 F.2d 1228 (5th Cir.1980), the Fifth Circuit held:

We find that the deeming process is an acceptable and rational response to legislative concern over abuse of the medicaid program by spouses who are not financially needing, that it does not invidiously discriminate among claimants, and that it is a proper general rule for the administration of large fund with a "modicum of efficiency." See Califano v. Jobst, 434 U.S. 47, 53, 98 S.Ct. 95, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977).
We also hold that Mississippi's deeming procedures do not unconstitutionally infringe upon the right of marriage. Mississippi's policy of considering the income of one spouse as available to meet the needs of the other spouse only incidentally burdens the marriage relationship. The Supreme Court has repeatedly recognized the "basic difference between direct state inference with a protected activity and state encouragement of an alternative activity constant with legislative policy."
Norman v. St. Clair, 610 F.2d 1228, 1243 (5th Cir.1980) (citations omitted).
[14] The plaintiff class admits not having previously presented the § 504 claim to this court but asserts that it is "based upon the exact same set of facts pled by plaintiffs and not disputed by defendant."
[15] The court notes, however, that the plaintiff class's argument is really not with the deeming regulations but that Indiana regulation that defines "continuous" and allows for a Medicaid applicant or recipient to gain the advantage of the MCCA rules only after 30 days of non-institutionalization.